723 A.2d 960

TERRY ALLOWAY, PLAINTIFF–APPELLANT, AND GREG ALLO-WAY, HUSBAND AND WIFE, PLAINTIFF, v. BRADLEES, INC., SHOPRITE, INC., VORNADO, INC., FRED BERNHARD EXCA-VATING CO., K & F CONSTRUCTION COMPANY, RICHARD J. WISE, JACK UTZ, PERMCO., INC., DANA CORP., MAC TRUCK, JOHN DOE (SAID NAME BEING FICTITIOUS), RICHARD ROE (SAID NAME BEING FICTITIOUS), ABC, INC., (SAID NAME

BEING FICTITIOUS), EFG, INC., (SAID NAME BEING FICTI-
TIOUS) AND HIJ CO. (SAID NAME BEING FICTITIOUS), DE-
FENDANTS, AND PAT PAVERS, INC., AMERICAN REFRIGER-
ATION, AMERICAN MANAGEMENT, JAMES BURLINGAME
AND AMERICAN DEVELOPMENT COMPANY, DEFENDANTS–
RESPONDENTS.

Argued September 14, 1998—Decided February 24, 1999.

*Joseph P. O'Donnell,* argued the cause for appellant (*Joseph P. O'Donnell & Associates,* attorneys).

*Stephen E. Gertler*, argued the cause for respondent Pat Pavers, Inc.

*Kimberly A. Jubanyik*, submitted a brief on behalf of respondents American Refrigeration, American Management and James Burlingame (*Edelstein, Mintzer & Sarowitz*, attorneys).

*Paul G. Witko*, submitted a brief on behalf of respondent American Development Company (*Purcell, Ries, Shannon, Mulcahy & O'Neill*, attorneys).

The opinion of the Court was delivered by

HANDLER, J.

This matter arises from an accidental injury sustained by a worker on a construction site. The injured worker was employed as a driver for an excavating subcontractor that had agreed to deliver crushed stone to a general paving contractor. As she was attempting to unload the crushed stone at the construction site, the worker was injured as a result of a defective mechanical component of the dump truck.

The issue in this appeal is whether a general or prime contractor has a duty to assure the safety of an employee of a subcontractor; and, more specifically, whether that duty encompasses the safety of equipment supplied by the subcontractor and used by its employee at the contractor's work site. In addressing that issue, we must also consider the relevance of statutory and regulatory safety standards governing the responsibilities of employers over workplace safety in determining the existence and the scope of such a duty of care.

I

In August 1990, American Development Company ("American Development") entered into a construction contract with Shop–Rite of Pennington, Inc. ("Shop–Rite") to renovate and convert the interior of a warehouse building at the Bradlees Shopping Center on Route 206 in Bordentown, New Jersey into a Shop–Rite

Supermarket. Vornado, Inc. owned the property and undertook to renovate the exterior of the premises. American Development hired American Management Company ("American Management") and American Refrigeration Company ("American Refrigeration"), two closely related companies, to manage and oversee the interior renovations. American Refrigeration used its employee, James Burlingame, as project manager.

During the renovations, Shop–Rite requested that a special exterior ramp be constructed for loading purposes. Shop–Rite contacted Burlingame to help arrange for the exterior paving work. Burlingame, on behalf of Shop–Rite, contracted with Pat Pavers, Inc. ("Pat Pavers"), an experienced paving and grading contractor. Burlingame informed Shop–Rite that he would oversee Pat Pavers's work, but only as a professional courtesy. He wanted to ensure that Pat Pavers did not damage already completed construction and that the ramp was properly finished.

Pat Pavers relied on its employee, Fred Bernhard, as grading foreman for the paving crews. David Radlinski, another Pat Pavers employee, was placed in charge of mechanical maintenance. Pat Pavers subcontracted with other entities to provide vehicles and drivers to transport paving materials. In particular, Pat Pavers subcontracted with Fred Bernhard Excavating Co. ("Bernhard Excavating"), a company owned by Pat Pavers employee, Fred Bernhard. Plaintiff Terry Alloway was an employee of Bernhard Excavating and drove one of its trucks. Bernhard Excavating provided both truck and driver to Pat Pavers on a per-diem basis.

The contractual relationship between Pat Pavers and Bernhard Excavating was not committed to writing. Bernhard Excavating paid its own drivers, purchased its own insurance, and maintained its own vehicles. Plaintiff received her wages and workers' compensation insurance from Bernhard Excavating and received no compensation or benefits from Pat Pavers.

The dump truck driven by plaintiff has a power take-off system that activates the lifting mechanism to raise the dumpster on the

truck. The system is engaged by a button within the passenger compartment of the truck. Plaintiff experienced problems with the power take-off system and the day before the accident discovered that a hydraulic pump, an integral part of the system, had fallen off a connecting bracket underneath the truck and was dragging on the roadway. Plaintiff brought this problem to the attention of her supervisor and Pat Pavers employee, Fred Bernhard.

Bernhard called Pat Pavers and discussed the matter with a superintendent, Keith Harvilla. Bernhard asked Pat Pavers to repair the pump on the truck because there was a load of asphalt already in its dumpster. Plaintiff subsequently drove the truck to Pat Pavers's garage, where Harvilla and another Pat Pavers employee, David Rablinsky, welded the pump back into place underneath the truck.

Plaintiff then drove the truck to another construction site. Harvilla followed. When plaintiff attempted to unload asphalt at the site, the bed of the truck would not raise. Harvilla used a 36" piece of steel manually to move a lever under the truck and engage the power take-off system. The truck bed then rose.

Harvilla informed plaintiff that the cable line required repair because it was stretched and did not allow the dump bed to rise. Harvilla also called Fred Bernhard at home that day, informing him that the cable must be fixed. Later in the evening, Fred Bernhard called plaintiff at home and informed her that the cable would be repaired or replaced by the next day. The cable was never fixed.

The following day plaintiff was sent to the Shop–Rite construction site to dump stone. Plaintiff had loaded and operated the dump truck once without incident that morning at another site. At the Shop–Rite site, however, the power take-off would not engage. Plaintiff got out of the truck. She attempted manually to engage the power take-off lever on the bottom of the truck. She shifted the lever as Harvilla had done the previous day, except instead of using a metal bar, she used her arm to reach

under the truck. The power take-off 'drive shaft engaged and started to spin. Plaintiff's hair and right hand became caught, and she was pulled under the truck. Plaintiff sustained serious injuries as a result.

The Department of Labor, Occupational Safety and Health Administration ("OSHA") conducted an investigation following the accident. As a result, Bernhard Excavating was cited for noncompliance with OSHA regulation 29 *C.F.R.* § 1926.21(b)(2), for failing adequately to train its employees engaged in operating a dump truck with the hazards associated with the power take-off device.

Plaintiff filed this action in the Superior Court, Law Division, Mercer County. Plaintiff named as defendants, among other parties, American Development, American Management, American Refrigeration, James Burlingame, Pat Pavers, and Bernhard Excavating.

Plaintiff alleged that these defendants owed her a duty to provide a reasonably safe workplace. Plaintiff contended that they breached this duty by failing to make inspections of hazardous equipment, namely, the dump truck, and failing to instruct her on the proper operation of such equipment. Defendants conceded that they owed plaintiff a duty to provide a reasonably safe workplace but denied that they breached this duty.

The trial court granted motions for summary judgment brought by all defendants. Plaintiff thereafter filed an appeal to the Appellate Division, which affirmed the decision of the Law Division. Following the denial of a motion for reconsideration, plaintiff then filed a petition for certification, which the Court granted. 152 *N.J.* 191, 704 *A.*2d 21 (1997).

## II

The basic issue in this case is whether defendant Pat Pavers, a paving contractor, owed a duty as a prime or general contractor to assure the safety of plaintiff, an employee of Bernhard Excavating, a subcontractor engaged to deliver paving materials, and

whether that duty extended to the subcontractor's equipment, a truck, which injured plaintiff while she was attempting to unload the materials at the work site. Determination of that issue necessarily involves consideration of the relevance of statutory and regulatory requirements, more specifically, OSHA regulations, imposed on general or prime contractors relating to the safety of employees of subcontractors at the work site.

The Appellate Division's primary holding was that Pat Pavers (as well as the other defendants) was not liable to plaintiff under general common-law negligence principles. The court considered and applied the traditional common-law rule that relieves a general contractor from liability for the negligence of a subcontractor, citing *Wolczak v. National Electric Products Corp.,* 66 *N.J.Super.* 64, 168 *A.*2d 412 (App.Div.1961). The court stated that "the only duty imposed upon a general contractor who has hired an independent subcontractor is to ensure that the premises on which the subcontractor performs its work are in a reasonably safe condition," and that "although a general contractor must provide a reasonably safe workplace, it is not required to eliminate all the potential hazards of the job performed by the subcontractor." (quoting *O'Keefe v. .Sprout–Bauer, Inc.,* 970 *F.*2d 1244, 1251 (3d Cir.1992)). Referring to *Majestic Realty Associates, Inc. v. Toti Contracting Co.,* 30 *N.J.* 425, 431, 153 *A.*2d 321 (1959), among other authorities, the Appellate Division further recognized three exceptions to that general rule based on such considerations as the retention of control over the manner of performing the work, the knowing hiring of an incompetent contractor, or the inherent danger of the work performed by the subcontractor. The court found that Pat Pavers "did not exercise general or supervisory control over Bernhard [Excavating]," and that none of the exceptions to the general rule of non-liability was applicable. See *Mavrikidis v. Petullo,* 153 *N.J.* 117, 133, 707 *A.*2d 977 (1998).

Plaintiff argues that although the prevailing rule is that a general or prime contractor is not responsible for the safety of the employees of a subcontractor in the performance of the subcon-

tractor's work, a different rule should apply in this case. She cites *Kane v. Hartz Mountain Industries,* 278 *N.J.Super.* 129, 650 *A.*2d 808 (App.Div.1994), *aff'd o.b.,* 143 *N.J.* 141, 669 *A.*2d 816 (1996). In that case the plaintiff, an employee of a subcontractor hired to work on the erection of the structural steel frame of a building, was severely injured when he fell from a steel beam. He sought damages from the general contractor for the project.

In finding liability, the Appellate Division relied heavily on the relevance of a statutory mandate, an OSHA regulation requiring safety nets, as supporting tort liability. *Id.* at 137, 650 *A.*2d 808. The court observed, however, that the basis for liability against a general contractor for the safety of the employees of a subcontractor should be found in "a more comprehensive rule" reflecting "general negligence principles." *Id.* at 143, 650 *A.*2d 808.

A major consideration in the determination of the existence of a duty of reasonable care under "general negligence principles" is the foreseeability of the risk of injury. *Carey v. Lovett,* 132 *N.J.* 44, 57, 622 *A.*2d 1279 (1993); *Weinberg v. Dinger,* 106 *N.J.* 469, 485, 524 *A.*2d 366 (1987). In addition, the determination of such a duty "involves identifying, weighing, and balancing several factors—the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution." *Hopkins v. Fox & Lazo Realtors,* 132 *N.J.* 426, 439, 625 *A.*2d 1110 (1993). The analysis leading to the imposition of a duty of reasonable care is "both fact-specific and principled," and must satisfy "an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy." *Ibid.; Clohesy v. Food Circus Supermarkets, Inc.,* 149 *N.J.* 496, 502, 694 *A.*2d 1017 (1997) (noting that the determination of the existence of a duty to exercise reasonable care is one of fairness and policy).

Invoking these principles, the Court in *Carvalho v. Toll Brothers & Developers,* 143 *N.J.* 565, 675 *A.*2d 209 (1996), considered the existence, nature, and extent of a common-law duty in circumstances analogous to those of this case. There, the issue was

whether a duty of care was owed by a project engineer, who was required to provide an on-site inspector to supervise the materials used and the rate at which work was performed. The decedent, a laborer employed by one of the subcontractors, was killed when a trench in which he was working collapsed. The project engineer's inspector witnessed the accident.

The Court first considered the foreseeability of the risk, including its nature and severity. It found that the danger of collapse posed by the deep trenches was apparent and the facts "point[ed] clearly to the foreseeability of the risk of injury to workers in the circumstances surrounding decedent's accident." *Id.* at 574, 675 A.2d 209. The Court noted that in the days before the accident, trenches in other areas of the site had collapsed on several occasions during construction and that workers had even resorted to the use of "trench boxes" to protect themselves from a potential collapse. *Ibid.*

The Court also considered the relationship between the parties. It noted that the engineer's express contractual responsibility was to ensure compliance with construction plans and the rate of work progress. *Id.* at 575, 675 A.2d 209. That responsibility, however, implicated safety concerns; there was some "overlap of work-progress considerations and work-safety concerns," and a "connection between the engineer's responsibilities over the progress of work and safety measures at the job site. . . ." *Ibid.*

The Court further stressed the "opportunity and capacity of [the] defendant to have avoided the risk of harm." *Id.* at 576, 675 A.2d 209. Based on the contractual terms regarding the duties of the engineer's on-site representative, the Court found a "[strong indication] that if safety conditions could affect work progress, the engineer had the authority and control to take or require corrective measures to address safety concerns." *Ibid.*

Finally, the Court considered fairness and policy in imposing a duty of care under the circumstances. Combining and weighing all relevant factors—the foreseeability of the nature and severity of the risk of injury based on the defendant's actual knowledge of

dangerous conditions, the relationship of the parties and the connection between the defendant's responsibility for work progress and safety concerns, and the defendant's ability to take corrective measures to rectify the dangerous conditions—the Court concluded that considerations of fairness and sound public policy impelled the recognition of a duty in the engineer to exercise reasonable care to avoid the risk of injury to employees of subcontractors on the construction site. *Id.* at 577–578, 675 *A.*2d 209.

In applying these general principles of tort liability in this case, we are constrained to consider and weigh the facts most favorably in support of plaintiff's contentions, which were rejected on the basis of defendant's motion for summary judgment. *See Brill v. Guardian Life Ins. Co.*, 142 *N.J.* 520, 666 *A.*2d 146 (1995). Viewed from that perspective, the record would support determinations that bolster plaintiff's position.

The risk of injury was clearly foreseeable. As in *Carvalho*, where the on-site engineer knew of the danger, the record here reflects actual knowledge on the part of Pat Pavers of the risk of harm. On the day prior to the accident, three Pat Pavers employees, including two supervisors, knew that the truck was defective, and had attempted to correct the defect. When plaintiff was unable to unload asphalt at the site because the dump bed would not raise, Pat Pavers supervisor Harvilla used a metal rod manually to engage a lever under the truck and empty its contents. The lever was located under the truck in an area unguarded from the power take-off drive shaft responsible for lifting the bed. Under the circumstances, it was reasonably foreseeable that this defective component presented a danger to a person who would attempt to correct the defect by manually engaging the mechanism.

Further, there was a substantial and close relationship between the parties that could and did implicate workplace safety concerns. Pat Pavers was responsible under its contract with Shop–Rite for constructing a special exterior ramp on the site for loading

purposes and had engaged Bernhard Excavating as a subcontractor to deliver paving materials with its own truck and driver. The principal of Bernhard Excavating, Fred Bernhard, was also a superintendent of Pat Pavers; Bernhard supervised paving crews and had direct knowledge of the requirements of the work. There was a clear connection between plaintiff's performance on behalf of Bernhard Excavating and Pat Pavers's own contractual interests. A breakdown or accident involving deliveries of paving materials by Bernhard Excavating would have resulted in an interruption and a delay in Pat Pavers's work.

The relationship of the parties also created both the opportunity and capacity on the part of Pat Pavers to exercise authority and control over the equipment of Bernhard Excavating if safety concerns were implicated. Pat Pavers's President, James M. Tuozzolo, acknowledged in depositions that Pat Pavers's supervisors had the authority to "dismiss" Bernard Excavating's trucks from its work site "if there were a problem that developed with an independent trucker's truck at the site [that] related to [the] job," such as a "truck [that] was mechanically deficient and couldn't pick up or dump the load," and "if they felt that the truck could not be operated without a danger to [Pat Pavers's] employees or other employees on the premises[ ]." The ability of Pat Pavers to undertake remedial measures is further evidenced by the fact that it had actually taken such steps to correct the mechanical defect in the truck the day before the accident.

The combination of these several factors—the foreseeability of harm, the relationship between the parties, and the opportunity and capacity to take corrective action—strongly supports the imposition of a duty of reasonable care on Pat Pavers to assure the safety of plaintiff on the work site as a matter of fairness and sound policy.

### III

In determining the scope of the duty owed by Pat Pavers to plaintiff and the possible breach of such a duty, the applicability

of federal safety regulations, specifically OSHA regulations, is highly relevant. The significance of such regulatory standards arises because the circumstances surrounding plaintiff's injury resulted in a violation of OSHA regulations by plaintiff's employer, Bernhard Excavating. The Appellate Division, however, concluding that OSHA regulations were not relevant, ruled that as a general matter there was "no merit to Alloway's contention that the general contractor owed a duty to see that subcontractors complied with OSHA regulations."[1]

We consider first whether the federal OSHA statutory and regulatory standards impose an independent duty of care that can be applied to Pat Pavers. The Appellate Division in *Kane, supra,* held that although a "violation of the obligations imposed by the federal [OSHA] regulations supports a tort claim under state law," 278 *N.J.Super.* at 141, 650 *A.2d* 808 (citation omitted), such a violation does not establish negligence *per se. Id.* at 144, 650 *A.2d* 808.

The analysis undertaken by the Appellate Division in *Kane* reiterates that earlier made in *Bortz v. Rammel,* 151 *N.J.Super.* 312, 376 *A.2d* 1261, *certif. denied,* 75 *N.J.* 539, 384 *A.2d* 518 (1977). There, the defendant, a general contractor, had engaged a roofing subcontractor to erect a roof for a new firehouse. The plaintiff, an employee of the roofing subcontractor, was working on the roof when a sudden gust of wind caused inadequately braced trusses to collapse, throwing plaintiff to the ground and rendering him a paraplegic. *Id.* at 315–17, 376 *A.2d* 1261. The Appellate Division considered whether state safety laws, the New Jersey Construction Safety Act, *N.J.S.A.* 34:5–166 to –181, served to impose direct tort liability on the general contractor. The court, quoting *Re-*

---

[1] The Appellate Division correctly noted that any violation of OSHA regulations in this case does not apply to American Development (and, by implication, its subcontractors American Management and American Refrigeration), because those parties were not under contract to perform the grading and paving project that gave rise to plaintiff's injuries.

*statement, Torts 2d,* § 874A at 65 (Tentative Draft No. 23, Apr. 1977), stated:

> When a legislative provision proscribes or requires certain conduct for the benefit of a class of persons but does not provide a civil remedy for the violation, the court may, if it determines that the remedy is appropriate in furtherance of the purpose of the legislation and needed to assure the effectiveness of the provision, accord to an injured member of the class a right of action, using a suitable existing tort action or a new cause of action analogous to an existing tort action.
>
> [*Id.* at 321, 376 *A.*2d 1261.]

The court concluded that the statutory safety mandates did not impose direct liability on the contractor. *Id.* at 322, 376 *A.*2d 1261.

In a later case, *Meder v. Resorts International Hotel,* 240 *N.J.Super.* 470, 476–77, 573 *A.*2d 922 (1989), the Appellate Division considered the effect of the repeal of the safety regulations promulgated under the Construction Safety Act that had been applied in *Bortz,* and the transfer of regulatory jurisdiction over workplace safety to the United States Department of Labor under OSHA. The court concluded that the OSHA regulations were not intended to impose direct liability or provide an independent tort remedy, but that a jury could find the failure to comply with OSHA regulations relevant to the proximate cause inquiry in a negligence action. *Id.* at 477, 573 *A.*2d 922.

These cases are grounded in the fact that OSHA and its predecessor, the Construction Safety Act, view regulatory enforcement, and not independent civil remedial action, as the central means to achieve workplace safety. As *Kane, supra,* recognized, while it is feasible to make liability turn on the violation of an OSHA regulation, a sounder approach accords the violation relevance, but not dispositive weight, in the liability inquiry:

> [T]he paramount consideration of a worker's safety is more clearly placed in focus by a more comprehensive rule which makes the primary contractor and each tier of subcontractor responsible for the safety of the workers under them on general negligence principles. This appears preferable to limiting liability to a specific finding of a violation of a regulation, which in some instances may be obscure, vague or difficult to comprehend or apply.
>
> [278 *N.J.Super.* at 143, 650 *A.*2d 808.]

Moreover, in the area of workplace safety, the common law provides ample remedial relief that is flexible and adaptive of changing circumstances. *See, e.g., Carvalho, supra,* 143 *N.J.* 565, 675 *A.*2d 209; *Bortz, supra,* 151 *N.J.Super.* 312, 376 *A.*2d 1261.

■ We find the reasoning of those decisions to be sound, and determine that the violation of OSHA regulations without more does not constitute the basis for an independent or direct tort remedy. Accordingly, we agree with the court in *Kane, supra,* that "the finding of an OSHA violation does not *ipso facto* constitute a basis for assigning negligence as a matter of law; that is, it does not constitute negligence *per se.*" 278 *N.J.Super.* at 144, 650 *A.*2d 808.

■ Nevertheless, OSHA regulations are pertinent in determining the nature and extent of any duty of care. We find applicable in the circumstances of this case the well-established principle that the violation of a legislated standard of conduct may be regarded as evidence of negligence if the plaintiff was a member of the class for whose benefit the standard was established. *J.S. v. R.T.H.,* 155 *N.J.* 330, 349, 714 *A.*2d 924 (1998); *Carrino v. Novotny,* 78 *N.J.* 355, 359, 396 *A.*2d 561 (1979); *cf. Eaton v. Eaton,* 119 *N.J.* 628, 636, 575 *A.*2d 858 (1990) (holding the violation of careless driving statute was negligence *per se* because statute specifically incorporated common-law standard of care).

Applying that principle to workplace settings, the Appellate Division in *Bortz, supra,* stated that "proof of deviation from a statutory standard of conduct, while not conclusive on the issue of negligence in a civil action, is nevertheless a relevant circumstance to be considered by the trier of fact in assessing tort liability." 151 *N.J.Super.* at 320, 376 *A.*2d 1261. It determined that the Construction Safety Act and its implementing regulations, primarily *N.J.A.C.* 12:180–3.15.1, "substantially qualified" the common-law rule by imposing a non-delegable duty on a general contractor to "assure compliance with the requirements of this Chapter from his employees as well as all subcontractors," and that those legislative mandates gave rise to a duty on the part of a general

contractor "to take the necessary steps to insure the safety of [the subcontractor's] employees." *Id.* at 319–20, 376 *A.*2d 1261.

In *Meder, supra,* the court observed that OSHA regulation 29 *C.F.R.* § 1926.16 imposed the same non-delegable duty for workplace safety on a general contractor as had the Construction Safety Act. 240 *N.J.Super.* at 476, 573 *A.*2d 922. The court found that the State's ceding regulation of workplace safety to OSHA had no effect on the public policy expressed and applied in *Bortz,* and ruled that "violation of the obligations imposed by the federal regulations supports a tort claim under state law." *Id.* at 477, 573 *A.*2d 922.

The Appellate Division in *Kane, supra,* considered the effect of OSHA regulations on the existence and scope of a duty of care, and stated that general and subcontractors have a joint, non-delegable duty to maintain a safe workplace that includes "ensur[ing] 'prospective and continuing compliance' with the legislatively imposed non-delegable obligation to all employees on the job site, without regard to contractual or employer obligations." 278 *N.J.Super.* at 142–43, 650 *A.*2d 808 (citation omitted). The court further observed that the common-law duty of a general contractor to assure the safety of its subcontractor's employees is not necessarily identical to the duty that arises from a general contractor's duty to comply with an OSHA regulation. *Id.* at 142, 650 *A.*2d 808. It thus recognized that "[c]ompliance with an OSHA regulation does not in and of itself preclude a finding of negligence," and, conversely, non-compliance with an OSHA regulation does not, as such, preclude a finding that there was no negligence. *Ibid.*

The issue thus presented is whether, in the circumstances of this case, any OSHA regulations were applicable to defendant Pat Pavers in respect of the accident that caused plaintiff's injuries, and whether their violation may constitute evidence of negligence. That issue must focus initially on whether OSHA regulations were applicable to Pat Pavers and whether plaintiff was an individual intended to be protected by those OSHA regulations.

The court in *Bortz, supra*, concluded that the State's statutory imposition of a duty on the general contractor expressed a clear legislative intention "to ensure the protection of all of the workers on a construction project, irrespective of the identity and status of their various and several employers, by requiring, either by agreement or by operation of law, the designation of a single repository of the responsibility for the safety of them all." 151 *N.J.Super.* at 321, 376 *A.*2d 1261; *cf. Dawson v. Bunker Hill Plaza Assocs.*, 289 *N.J.Super.* 309, 320–21, 673 *A.*2d 847 (App.Div. 1996) (reaffirming state public policy favoring general contractor as single repository of responsibility of safety of all employees on job but declining to extend liability to landowner, upon whom OSHA imposes no affirmative duties).

Several OSHA regulations may apply to Pat Pavers in respect of the accidental injury to plaintiff at its work site. We cannot, however, on this record, in the absence of a more complete development of relevant facts and presentation of this issue, resolve the applicability of such regulations and whether their alleged violation by Pat Pavers can be considered evidence of negligence. Those issues, we conclude, must be further considered and determined in a trial of this matter.

■ As a prime contractor, Pat Pavers may be liable for any of its subcontractor's violations of OSHA regulations as well as its own by the terms of 29 *C.F.R.* § 1926.16. That regulation states that "[b]y contracting for full performance of a contract . . . the prime contractor assumes all obligations prescribed as employer obligations under the standards contained in this part, whether or not he subcontracts any part of the work." 29 *C.F.R.* § 1926.16(b). It further provides that "[w]ith respect to subcontracted work, the prime contractor and any subcontractor or subcontractors shall be deemed to have joint responsibility." 29 *C.F.R.* 1926.16(c). It also states: "In no case shall the prime contractor be relieved of overall responsibility for compliance with the requirements of this part for all work to be performed under the contract." 29 *C.F.R.* § 1926.16(a).

Plaintiff further contends there was a sufficient connection between Pat Pavers and Bernhard Excavating to posit both vicarious and direct liability on Pat Pavers under OSHA as evidence of negligence. Plaintiff argues that Fred Bernhard and Keith Harvilla were employees of Pat Pavers, and that these employees had specific knowledge of the defect in the truck driven by plaintiff, but did not take adequate measures to prevent her from operating it in an unsafe condition. Therefore, according to plaintiff, Pat Pavers's employees violated duties required by the OSHA regulation for which Bernhard Excavating, as already noted, was cited, 29 *C.F.R.* § 1926.21(b)(2), which would require it to "instruct each employee [including employees of a subcontractor] in the recognition and avoidance of unsafe conditions," as well as the regulation that would require it to check all vehicles at the beginning of each shift "to assure that ... [they] are in safe operating condition ..." 29 *C.F.R.* § 1926.601(b)(14).

Plaintiff also points out that "Bernhard Excavating rents drivers and vehicles to [Pat] Pavers on a per diem basis," and that Pat Pavers not only rented the truck from Bernhard Excavating but also "rented [plaintiff's] services." The issue of whether plaintiff was a rental employee of Pat Pavers was raised for the first time by plaintiff in a motion for reconsideration before the Appellate Division, which denied the motion without reference to that specific point. In any event, the record, including particularly the evidence that Pat Pavers did not exercise general supervisory control over Bernhard Excavating, does not support the finding that a rental arrangement or special-employment relationship existed between plaintiff and defendant Pat Pavers. *See Volb v. G.E. Capital Corp.*, 139 *N.J.* 110, 651 *A.*2d 1002 (1995) (determining that employee of subcontractor was not loaned or special employee of defendant contractor because of absence of control); *Kelly v. Geriatric & Medical Servs., Inc.*, 287 *N.J.Super.* 567, 571–72, 671 *A.*2d 631 (App.Div.) (citing five-part test for establishing special employer-employee relationship), *aff'd o.b.*, 147 *N.J.* 42, 685 *A.*2d 943 (1996). Moreover, it is uncertain whether evidence of a

shared employment or "special employment" relationship would otherwise establish a basis for applying OSHA regulations to Pat Pavers as additional grounds for determining possible negligence. *Compare Teal v. E.I. DuPont de Nemours and Co.*, 728 *F.*2d 799, 804 (6th Cir.1984) (holding that Congress intended that all employees, including employees of independent contractors, should be covered by a secondary employer's duty to comply with OSHA standards) *with Melerine v. Avondale Shipyards, Inc.*, 659 *F.*2d 706 (5th Cir.1981) (holding that "the class protected by OSHA regulations comprises only employers' own employees," in the traditional narrow sense).

In sum, although OSHA issued a violation to Bernhard Excavating, and not to Pat Pavers, the failure by OSHA to find a violation against a particular party does not preclude a determination that the party nevertheless was subject to a duty imposed by OSHA regulations and that the standards prescribed by OSHA were violated. If it is determined that OSHA regulations are applicable to Pat Pavers under the circumstances, they may be considered in determining the standard of care that was owed plaintiff and whether that standard was breached.

### III

We conclude that the evidence was sufficient to withstand defendant's motion for summary judgment. *Brill, supra,* 142 *N.J.* 520, 666 *A.*2d 146. A reasonable jury weighing the evidence in plaintiff's favor could determine the existence of facts that, based on the foreseeability of the risk of injury, the relationship of the parties, and the opportunity to take corrective measures, would support the determination that there was a duty of care owed to plaintiff that was breached by defendant.

In addition, the record further discloses evidence that could support a finding sufficient to apply OSHA regulations to Pat Pavers and determine that there were regulatory violations chargeable to defendant. Facts that demonstrate an OSHA viola-

tion constitute evidence of negligence that is sufficient to overcome a motion for summary judgment. *Izzo v. Linpro Co.*, 278 *N.J.Super.* 550, 556, 651 *A.*2d 1047 (App.Div.1995) (reversing summary judgment entered in favor of general contractor, and noting that plaintiff had distinct claim that defendants violated general contractor's non-delegable duty to ensure compliance with OSHA regulations); *see Kane, supra,* 278 *N.J.Super.* at 141, 650 *A.*2d 808; *Meder, supra,* 240 *N.J.Super.* at 477, 573 *A.*2d 922.

The conclusion that the record discloses evidence sufficient to resist a motion for summary judgment clearly does not foreclose disputes that will present triable issues of fact. For example, Pat Pavers contends that it repaired the truck only at the request of plaintiff's employer, Bernhard Excavating, indicating that it did not breach any duty that it owed plaintiff. It also contends that it had been informed that Bernhard Excavating had fixed the defective cable in the truck before the truck arrived at the work site on the day of the accident, a contention that raises an issue of fact that might, by way of defenses implicating proximate cause and comparative fault, ultimately avoid or reduce liability. The evidence in support of these contentions, however, does not for purposes of defeating defendant's motion for summary judgment overcome the evidence that supports the existence of a duty to exercise reasonable care under the circumstances and the breach of that duty by Pat Pavers.

## IV

We reverse the Appellate Division's affirmance of the trial court's grant of summary judgment in favor of defendant Pat Pavers and remand for trial.

*For reversal and remandment*—Chief Justice PORITZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN, and COLEMAN—7.

*Opposed*—None.