**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0166-22

LUCAS ELEUTERIO,

    Plaintiff-Appellant,

v.

FAR BROOK HOLDINGS, LLC,
FAR BROOK HOMES, LLC,
CHARLES HE, JUN XIN, and
DURSO GROUP, LLC,

    Defendants/Third-Party
    Plaintiffs–Respondents,

v.

EXPRESS CONSTRUCTION
30 CORP.,

    Third-Party Defendant.

_____

Argued November 13, 2023 – Decided December 5, 2023

Before Judges Sabatino, Mawla and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-3984-17.

Bruce H. Stern argued the cause for appellant (Stark and Stark, PC, attorneys; Bruce H. Stern, of counsel and on the brief).

Frederick Conrad Biehl, III, argued the cause for respondents Far Brook Homes, LLC, and Far Brook Holdings, LLC (McCarter & English, LLP, attorneys; Frederick Conrad Biehl, III and Penelope M. Taylor, on the brief).

PER CURIAM

This personal injury action arises out of a construction site accident in which plaintiff Lucas Eleuterio fell twelve feet to the ground from an elevated level of a partially built house. At the time of the accident, plaintiff was working for Express Construction 30 Corp. ("Express"), a framing subcontractor. He was carrying a board while clearing a plywood deck on the first floor above the house's basement. Unbeknownst to plaintiff, the plywood hung over the edge of the side of the structure and was not nailed down. Plaintiff stepped on the unsecured plywood, lost his balance, and fell to the ground. There was no "fall protection" such as guardrails or harnesses in place to protect plaintiff from descending to the ground.

Plaintiff sued various defendants in the Law Division, alleging they were negligent. Defendants brought a third-party complaint against plaintiff's employer, Express. After one of the defendants settled and the third-party

claims were severed, plaintiff's case focused on a limited liability company, defendant Far Brook Homes, LLC ("Far Brook"), which has acknowledged it was the general contractor for the project.

Far Brook moved for summary judgment, contending it owed no legal duty to plaintiff concerning the jobsite's safety. After hearing oral argument, the trial court was persuaded that Far Brook owed no such duty and granted it summary judgment. This appeal by plaintiff ensued.

For the reasons that follow, we vacate the summary judgment order without prejudice and remand for a plenary hearing with testimony from pertinent witnesses whose credibility can be evaluated. The plenary hearing is necessary for the trial court to resolve disputed questions of fact, and ascertain other facts, that bear upon the so-called <u>Alloway</u> factors[1] governing the existence of a duty in construction accident cases such as this one.

## I.

The summary judgment record presents the following facts—and matters of disputed and unknown fact—pertinent to our discussion.

Plaintiff's accident occurred at a residential construction site in Short Hills. The owner of the property is defendant Charles He. He and his wife,

---

[1] <u>Alloway v. Bradlees, Inc.</u>, 157 N.J. 221 (1999).

 A-0166-22

defendant Jun Xin, were building a house there, as they had done with a few other properties. Xin formed Far Brook, which is a limited liability company ("LLC"), for the purpose of building the house. Xin was the sole member of the LLC.[2]

As admitted in the answer to the complaint, Far Brook was the general contractor for the project. The building permit for the project identifies Far Brook as the sole contractor.

To advance the project, Far Brook entered into a two-page contract with an experienced building company, defendant Durso Group, LLC ("Durso Group), which had built about one hundred homes in the area. The contract was initially drafted by Xin herself. The contract was revised after the Durso Group's principal, William Durso, reviewed it. The revised contract was then signed by Xin and William Durso. The contract provided that Far Brook would pay the Durso Group $60,000 for its services.

Among other things, the Far Brook-Durso contract recited in paragraph 1 that "Far Brook Homes is delegating its complete field management and

---

[2] He and Xin formed a related company, defendant Far Brook Holdings, LLC, an entity which the parties agree is not relevant to the issues on appeal. Consequently, all further references in this opinion to "Far Brook" refer to defendant Far Brook Homes, LLC.

A-0166-22

operations to the Durso Group in building a new home" at the site. Further, in paragraph 2, the Durso Group "agree[d] to designate an experienced field manager to supervise the construction process." Among other duties, the field manager's duties entailed "scheduling inspections at different phases, walking-through with inspectors, resolving critical issues, routine checking on a daily basis, etc." The contract was silent with respect to the allocation of jobsite safety responsibilities.

Anthony Chipoletti of the Durso Group was designated the project manager for the construction. According to his deposition testimony, Chipoletti was only able to be present on the jobsite infrequently because of family issues he was dealing with during that time frame. By comparison, Xin could not remember at her deposition how often she was present at the jobsite.

Plaintiff's employer, Express, was hired as the framing subcontractor. Its agreement was with Far Brook and not with the Durso Group. Xin had hired Express previously for other construction projects. According to William Durso's deposition testimony, Xin insisted on having Far Brook contract directly with the subcontractors, including Express. There was no formal agreement between Express and Far Brook, except for an itemized purchase order in which

5

Express was paid $35,000 for its framing work. The principal of Express was Wesley Melo.

On December 28, 2016, Melo directed plaintiff to remove wood and clean the deck. The deck was the first floor above the basement of the house. Melo, plaintiff, and their coworkers from Express were the only people present on the site that morning. Plaintiff cleaned the deck without incident for twenty minutes, observing no loose plywood or other dangerous conditions.

As plaintiff was tossing a four-foot piece of plywood from the deck, he stepped on plywood that was hanging over the edge and not nailed down. That caused him to fall over the side of the building, with the wood in his hands.

Plaintiff testified that nobody saw him fall because "if they did they would have helped me earlier or faster." Plaintiff passed out when he hit the ground and could not move his legs when he regained consciousness.

Another employee, unnamed in this record, first reached plaintiff before Melo arrived and asked what happened. When plaintiff responded that he had fallen and could not move his legs, the employee and Melo picked up plaintiff and moved him into a parked van. Melo drove plaintiff to a local hospital.

A-0166-22

Plaintiff testified that he never observed any fall protection[3] on the site. Chipoletti testified to the same.

Plaintiff presented an expert report by Vincent A. Gallagher, who addressed pertinent regulations adopted by the federal Occupational Safety and Health Administration ("OSHA").[4] In conducting his OSHA analysis, Gallagher reviewed, among other things, the deposition testimony of He, Xin, Durso, Chipoletti, and plaintiff; photos of the area where the accident occurred; the contract between Far Brook and the Durso Group; and interrogatory responses by Far Brook and the Durso Group.

Gallagher stated in his report that the functions delegated to the Durso Group by its contract with Far Brook "are those customarily performed by a general contractor." However, he qualified that point by noting that "[d]eposition testimony of representatives of both entities [i.e., Far Brook and

---

[3] Fall protection "means any equipment, device, or system that prevents an employee from falling from an elevation or mitigates the effect of such a fall." Occupational Safety and Health Standards, 29 C.F.R. § 1910.2 (1974). Based on the questioning at Chipoletti's deposition, fall protection on this site could include "guardrails," "safety nets," or a harness connected to a rope (called a "fall arrest system").

[4] It does not appear from the record that Gallagher was deposed. The appellate record does not describe his qualifications.

A-0166-22

the Durso Group] show that both were performing functions customarily performed by a general contractor."

Gallagher noted that he spoke with plaintiff by telephone, who reported to him that "Xin had actual knowledge of the fact that there were no guardrails around the perimeter of this floor. She also would have been able to see that the plywood extended over the edge of the building."

Gallagher concluded both Far Brook and the Durso Group violated OSHA standards by failing "to plan, monitor and ensure that [the] work site was safe and in compliance with OSHA regulations." Specifically, he opined the entities violated the following OSHA standards: 29 C.F.R. § 1926.20(b)(1) (employer responsibility to maintain accident prevention programs), 29 C.F.R. § 1926.20(b)(2) (content of accident prevention programs), 29 C.F.R. § 1926.32(f) (definition of a competent person), 29 C.F.R. § 1926.21(b)(2) (employer responsibility to instruct employees on recognition and avoidance of unsafe conditions), 29 C.F.R. § 1926.501(a)(2) (employer responsibility to determine safety of walking surfaces), and 29 C.F.R. § 1926.501(b)(13) (requirement of fall protection for workers).

Notably, 29 C.F.R. § 1926.16(b) of the OSHA regulations specifies that a "prime contractor assumes all obligations prescribed as employer obligations

8

. . . whether or not [the prime contractor] subcontracts any part of the work." The employer regulations, in turn, impose an obligation to have fall protection on the jobsite. 29 C.F.R. § 1926.501(b)(13). It does not appear that OSHA inspected this jobsite after plaintiff's fall occurred.

Following discovery, all defendants moved for summary judgment. The trial court granted the motions of He, Xin, and Far Brook Holdings, LLC, because plaintiff only opposed the motions of the Durso Group and Far Brook. The trial court denied the Durso Group's motion, finding the existence of genuine issues of material fact that could support plaintiff's claim that the firm owed him and breached duties of reasonable care. However, the court granted summary judgment to Far Brook. In essence, the court concluded that Far Brook only owed plaintiff a duty to ensure the premises of work were reasonably safe, not to ensure subcontractor employees safely did the work they contracted to perform. Plaintiff moved for reconsideration of the decision as to Far Brook, which the court denied.

Thereafter, plaintiff reached a settlement with the Durso Group. Plaintiff filed the present appeal to revive its claims against Far Brook.

II.

In reviewing the trial court's summary judgment ruling, we apply well-settled principles. The grant of a motion for summary judgment is reviewed de novo. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). We consider the factual record, and reasonable inferences that can be drawn from those facts, "in the light most favorable to the non-moving party" to decide "whether the competent evidential materials presented . . . are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Statewide Ins. Fund v. Star Ins. Co., 253 N.J. 119, 125 (2023) (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)); R. 4:46-2(c).

On appeal, we accord no special deference to a motion judge's assessment of the documentary record. The decision to grant or withhold summary judgment does not hinge upon determinations of the credibility of testimony rendered in court, but instead amounts to a ruling on a question of law. See Manalapan Realty, L.P. v. Manalapan Twp. Comm., 140 N.J. 366, 378 (1995) (noting that no "special deference" applies to a trial court's legal determinations). More specifically here, "the question of whether a duty exists is a matter of law properly decided by the court . . . ." Strachan v. John F. Kennedy Mem'l Hosp., 109 N.J. 523, 529 (1988). We therefore review de novo

10

the trial court's finding of a lack of duty of safety owed to subcontractor employees.

The substantive issues before us are also guided by well-established precedent. Under New Jersey law, a general contractor is not liable for the negligent acts of an independent contractor unless: (1) the general contractor retains control over the manner and means of the work performed; (2) the general contractor knowingly hires an incompetent contractor; or (3) the work constitutes negligence per se. Tarabokia v. Structure Tone, 429 N.J. Super. 103, 113 (App. Div. 2012).

If none of the above exceptions apply, the balancing test the Supreme Court prescribed in Alloway applies. 157 N.J. at 230. Alloway holds that in determining whether a duty of reasonable care exists, courts should consider (1) "the foreseeability of the risk of injury." If foreseeability is established, the court should also identify, weigh, and balance several additional factors: (2) the relationship of the parties, (3) the nature of the attendant risk, (4) the opportunity and ability to exercise care, and (5) the public interest in the proposed solution." Ibid. (quoting Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439 (1993)). "The analysis leading to the imposition of a duty of reasonable care is 'both fact-specific and principled,' and must satisfy 'an abiding sense of basic fairness

under all of the circumstances in light of considerations of public policy." Ibid.

Under Alloway, "the violation of OSHA regulations without more does not constitute the basis for an independent or direct tort remedy." 157 N.J. at 236. However, "OSHA regulations are pertinent in determining the nature and extent of any duty of care." Ibid. "'[P]roof of deviation from a statutory standard of conduct, while not conclusive on the issue of negligence . . . is nevertheless a relevant circumstance to be considered . . . .'" Ibid. (quoting Bortz v. Rammel, 151 N.J. Super. 312, 320 (App. Div. 1977)).

Further, this court has held that "OSHA regulation 29 C.F.R. § 1926.26 imposed [a] . . . non-delegable duty for workplace safety on a general contractor." Id. at 237 (citing Meder v. Resorts Int'l Hotel, Inc., 240 N.J. Super. 470, 476 (App. Div. 1989)). "The regulations permit general contractors and subcontractors to make their own agreements with regard to the division of labor, however, '[i]n no case shall the prime contractor be relieved of overall responsibility for compliance with the requirements of this part for all work to be performed under the contract.'" Fernandes v. DAR Dev. Corp., 222 N.J. 390, 405 (2015) (alteration in original) (quoting 29 C.F.R. § 1926.16 (2014)).

Plaintiff has pointed out that the deposition testimony in this case contains numerous conflicting assertions that bear upon the Alloway duty analysis.

Fundamentally, there are sharp conflicts between, on the one hand, Xin's testimony and, on the other hand, the testimony of Durso and Chipoletti concerning what actually transpired at the job site and the parties' understanding, if any, concerning the allocation of responsibilities for safety.

The testimonial conflicts regarding worker safety are especially pronounced. Chipoletti denied that he had any safety responsibilities at the job site. He stated he "never" had a conversation with Xin about safety on the construction site because "it wasn't expected of me." Chipoletti merely acknowledged that, if he saw a dangerous condition, he would have advised Xin, so she would "inform the contractor."

Similarly, Durso testified that "We weren't hired to be a safety inspector. That's not what we do. We were hired to coordinate times to help [Xin] obtain the CO [certificate of occupancy]. We weren't there to do any safety inspections. We're not a safety company." He insisted that the Durso Group did not have responsibility for "anything that had to do with OSHA or safety issues."

By contrast, Xin testified at her deposition that she hired the Durso Group "to do all the field management and to build the house . . . I just kind of [saw] the progress, how the house was built and ma[d]e financial payment[s]." When asked what steps she took to ensure worker safety, Xin responded that she "hired

[the] Durso Group to make sure everything is okay . . . [t]hey have expertise, they know what they're doing, I [didn't] tell [them] what to do."

The deposition testimony was also contradictory regarding defendants' interactions with subcontractors. Durso testified that his firm's responsibilities on the project were "to kind of [hand hold] the process for them [Xin, He and Far Brook] to coordinate inspections, building permits, obtain COs, meet with the inspectors and help [Xin] schedule the job out." As recounted by Durso, his firm's scope of work did not include "[a]ny payments to the subs [i.e., subcontractors], any hiring of the subs, any—any conversations with the subs, I believe most of it, 99 percent of it was done through [Xin]." Durso did not select Express and he did not recall ever speaking with anyone from Express.

Meanwhile, Xin testified that even though she hired subcontractors familiar to her from previous projects, the subcontractors would tell Chipoletti what they needed and Chipoletti would arrange and schedule the delivery of materials without her input. Xin further testified that if a subcontractor had a question, it would "usually" call the Durso Group. Xin could not recall how often she visited the construction site each week, asserting that she "just stop[ped] by to see how the progress [was]."

In his own testimony, Chipoletti denied that he was responsible to meet

14

with new subcontractors to give them instructions regarding the project. He maintained that his primary activity on the site was to talk with Xin about "[t]he building process, what needed to be done next." According to Chipoletti, he "[v]ery seldom" spoke with subcontractors, although he did recall speaking once with Melo. He insisted that Xin coordinated the work among the subcontractors.

Defendants also engaged in mutual finger-pointing concerning responsibility for OSHA compliance. Xin testified she has never received any construction site safety training or OSHA training. Despite her lack of such training, Xin is highly educated, with a master's degree in computer science and an MBA. She has worked as a project manager for Verizon, Citigroup, and Ford on non-construction projects.

Chipoletti testified that he never asked Xin if she had any OSHA training or if she had any construction experience. His understanding of her experience was a belief that "she had a partner that she built other houses with." At the time of the project and plaintiff's accident, Chipoletti did not have any OSHA training. He did not know if anyone employed by the Durso Group had any OSHA training before the beginning of this project.

In a similar vein as Chipoletti, Durso testified that he relied on subcontractors to ensure OSHA compliance. He stated the Durso Group did

nothing to assure such compliance itself.

The deposition testimony also clashed with respect to Chipoletti's responsibilities as project manager. Chipoletti testified that his general responsibilities as a project manager included scheduling "contractors, trades, vendors, inspectors, architects" and "oversee[ing] construction of the home or commercial building." He was also responsible for scheduling all township and municipal inspections. Because his fiancé passed away between when the framing began and plaintiff's accident, "there was a lot of time [he] wasn't there." As recalled by Durso, Chipoletti was at the construction site "once a week to meet with [Xin] and he was there during the week, maybe three times during the week."

These many discrepancies within the deposition testimony greatly impede a thorough analysis of the Alloway duty factors. Given the multiple genuine issues of material fact about the respective roles of Xin/Far Brook and the Durso Group, the record is muddy. Until the relevant facts are made clear, the Alloway factors of foreseeability, the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest cannot be sensibly determined and weighed.

Apart from the testimonial conflicts we have noted above, there are also

16

pertinent facts that were not developed in the present record. For instance, at oral argument on the appeal, neither counsel could represent whether He and Xin had intended to build the house for personal use or commercial profit. If their venture was indeed a commercial one, that may bear upon the nature of the parties' relationships and the fairness of imposing a duty of care upon their business.

Similarly, the trial court placed significant weight on Xin's alleged status as a construction novice. But it is unclear if her professed lack of experience should excuse her and her LLC from the responsibilities for jobsite safety imposed upon prime or general contractors under OSHA[5] and negligence law. Having chosen to hold herself out as a general contractor, Xin or her LLC arguably should have borne the responsibilities customarily associated with that title. The record is unclear about what authority and tangible benefits, including cost savings, that Xin received by declaring her LLC to be a general contractor.

Further, if the trial court finds credible the testimony of Durso and Chipoletti—that they expected Xin and Far Brook to be exclusively responsible

---

[5] OSHA defines "prime contractors" as people or entities who contract "for full performance of a contract . . . ." 29 C.F.R. § 1926.16(b). "The prime contractor assumes the entire responsibility under the contract and the subcontractor assumes responsibility with respect to his portion of the work." 29 C.F.R. § 1926.16(c).

 A-0166-22

for assuring that the subcontractors maintained worksite safety and OSHA compliance—the court should consider whether their reliance was unreasonable and, if so, whether that affects the Alloway factors. In making that assessment, the court should consider the substantial contract price paid to the Durso Group as consideration for its services.

In sum, the appellate record is replete with uncertainties and conflicting deposition testimony. The trial court's decision did not explicitly address and resolve many of those fact-driven issues. Under the circumstances, summary judgment must be vacated without prejudice. On remand, the trial court shall conduct a plenary hearing, at which time the pertinent witnesses can testify, and the court can make associated credibility determinations. At the conclusion of the hearing, the trial court shall consider the duty issue anew, addressing each of the Alloway factors with the benefit of an expanded and clarified record.[6]

Vacated and remanded. We do not retain jurisdiction. The trial court shall convene a case management conference within thirty days to plan the plenary hearing.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[6] Counsel agreed at oral argument on the appeal that the question of duty is not a suitable question for a jury. See Strachan, 109 N.J. at 529.

A-0166-22