**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2384
_____

KEITH SEVICK,
                                        Appellant

v.

LIFETIME INC; LFT CONSTRUCTION CO LLC, doing
business as Lifetime Construction; AGL SPRAY FOAM LLC

_____

On Appeal from the United States District Court for the
District of New Jersey
(District Court No. 3:21-cv-02122)
District Judge: Honorable Robert Kirsch

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 16, 2025

(Filed: September 18, 2025)

Before:  RESTREPO, McKEE, RENDELL, *Circuit Judges*.
_____

O P I N I O N[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

**RENDELL**, *Circuit Judge*.

Appellant Keith Sevick sued Appellees Life Time, Inc. and LFT Construction Company, LLC (collectively "Life Time") for negligence that resulted in serious injuries sustained while applying paint onto foam insulation in Life Time's building. The District Court granted summary judgment to Life Time because it concluded Life Time owed no duty to protect against the hazard that caused Sevick's injury. We will affirm.

I.

Sevick's employer, AGL Foam Spray, LLC ("AGL"), was a subcontractor at Life Time's construction site responsible for installing foam insulation. Sevick's job was to spray fireproof paint on top of the insulation using a "spray machine." *Sevick v. Life Time Inc.*, No. 21-cv-2122, 2024 (RK) (JTQ), WL 3219615, at *1 (D.N.J. June 28, 2024). Electric heaters were on site to keep the paint warm.

Sevick and his coworker, Steven Appenzeller, had been experiencing problems with the building's electrical system. When the spray machine was plugged into a building outlet, a breaker would trip. Eventually, Appenzeller was able to make the spray machine work by plugging it into one of the electric heaters. Doing so apparently allowed the spray machine's power to "'bypass' the circuit breaker in the outlets." *Sevick*, 2024 WL 3219615, at *3.

At some point, the hose of the spray machine was placed "on top of the heater," although the record does not reveal who placed it there. *Id.* at *4. Heat from the heater then created a rupture in the hose, from which paint sprayed out. Life Time employee Wilhelm Haeger, noticing the situation from several feet away, waved his arms and

2

pointed at the spray machine. Sevick approached the machine but was unable to reach the button to turn it off, as the spraying paint blocked his path. Instead, Sevick grabbed the hose—causing extensive injuries to his hand and arm. He was then able to turn off the machine by kicking the power button.

The spray machine was AGL's own equipment. The parties dispute who supplied the heater, but there is evidence (albeit conflicting) that it was supplied by Life Time. The contract between AGL and Life Time "required AGL to supply temporary power and heat (to the extent not provided by Life Time) to complete AGL's work." *Id.* at \*10 (citation modified). The contract also generally obligated AGL to assume responsibility for the safety of its own employees, although there was testimony that, in practice, Life Time's supervisors monitored the entire job site for safety issues.

## II.[1]

The District Court granted summary judgment to Life Time because it concluded Life Time owed no duty to guard against the hazard that caused Sevick's injury.

The parties agree that Life Time stood in the position of a general contractor in charge of the worksite. Under traditional negligence principles, a general contractor is obligated "to exercise reasonable care to maintain the premises in a reasonably safe condition" but need not eliminate "known hazards which are part of or incidental to the very work the [sub]contractor was hired to perform." *Wolczak v. Nat'l Elec. Prods. Corp.*,

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1332(a). We have jurisdiction under 28 U.S.C. § 1291.

3

168 A.2d 412, 415, 417 (N.J. Super. Ct. App. Div. 1961). The District Court reasoned that Sevick's injury fell into the latter category because it was caused by AGL's own equipment and AGL routinely worked near heaters when needed to keep its paint warm. *Sevick*, 2024 WL 3219615, at *7. The District Court rejected Sevick's argument that Appenzeller's decision to power the spray machine in an unusual way—i.e., from a heater—should change that result. Life Time had no involvement in that decision, which reflected, instead, the "subcontractor's choice to carry out its task in an abnormally hazardous way." *Id.* at *8.

The District Court also determined that Life Time owed no duty under the modern negligence principles stated in *Alloway v. Bradlees, Inc.*, 723 A.2d 960 (N.J. 1999). In that case, an employee of a subcontractor was injured when she attempted to work around a mechanical flaw in her truck, and the New Jersey Supreme Court reasoned the facts could support imposing a duty on the general contractor based on its awareness of the hazard (and unfulfilled offer to repair it), its control over the plaintiff's work, and its possible violation of OSHA regulations. *Id.* at 965–69. But as the District Court here explained, this case was different: Life Time had no awareness that Appenzeller would plug the spray machine into a heater, that an unidentified person would place the hose over it, or that Sevick would reach for the damaged hose. Nor did Life Time have control over AGL's equipment or how that equipment would be used, other than general supervisory control over the worksite. *Sevick*, 2024 WL 3219615, at *11. Notably, AGL was supposed to supply its own "temporary power" if needed, leaving "no basis to conclude that it was foreseeable to Life Time that AGL's employees would plug their

4

equipment (the spray machine) into a heating unit . . . , let alone that doing so would lead to the hose being laid on top of the heating unit and a leak forming." *Id.* at *10.

As for OSHA regulations, Sevick's expert had opined that Life Time violated two regulations, but the District Court found them inapplicable. A regulation requiring sufficient clearance and ventilation around heaters to prevent fires bore no relation to how Sevick's injury occurred. *Id.* at *12 (citing 29 C.F.R. § 1926.154). The other regulation merely defined the word "[b]arricade" but did not require barricades to be placed around heaters. 29 C.F.R. § 1926.203 (effective prior to July 15, 2019).

Finally, the District Court was "quite dubious" of Sevick's theory that Haeger, in pointing at the ruptured hose and waving his arms, negligently performed a "service[]" to Sevick as provided in Restatement (Second) of Torts § 323 (1965). *Sevick*, 2024 WL 3219615, at *13. Even assuming that merely "pointing out a danger to a person" could "trigger[] a duty to do anything further," nothing Haeger did harmed Sevick: the spraying hose was the same both before and after Haeger pointed and waved his arms. *Id.* at *13-14. Haeger never instructed Sevick to grab the hose, and, since it was not Haeger's machine, he had no reason to suspect that Sevick would do so.

III.

We agree with the District Court's reasoning and find Sevick's contrary arguments unpersuasive. Sevick's injury was incidental to the manner in which the subcontractor, AGL, performed its work. While Sevick points to the building's faulty electrical system, he offers no evidence that that condition was either unusual or hazardous, and the only evidence on either point is that AGL was contractually obligated to supply its own

5

temporary power. As for Haeger's act of pointing and waving his arms, that did not increase the danger to Sevick for the reasons the District Court explained. We also agree with the District Court that Life Time had no reason to foresee the unusual chain of events running from Appenzeller's plugging the spray machine into a heater, the hose ending up on top, the hose rupturing, and Sevick grabbing it. Life Time's general supervision of the worksite, without more, would not create a duty to guard against such an unforeseeable injury related to the use of the subcontractor's own equipment. *See Alloway*, 723 A.2d at 964 (describing foreseeability as the "major consideration" in whether to impose a duty). Sevick's additional arguments regarding OSHA violations and the Restatement of Torts lack merit.

IV.

For these reasons, we will affirm the District Court's grant of summary judgment.