742 A.2d 1017 (2000)
327 N.J. Super. 186
Denni SLACK, Plaintiff-Appellant,
v.
Thomas WHALEN and Margaret Whalen, Defendants-Respondents,
and
Trident Builders, Inc.,[1] Defendant.
Superior Court of New Jersey, Appellate Division.
Argued December 8, 1999.
Decided January 10, 2000.
*1018 Scott M. Wilhelm, Phillipsburg, for plaintiff-appellant (Pfeiffer & Winegar, attorneys; Mr. Wilhelm, of counsel and on the brief).
Michael Della Rovere, Whippany, for defendants-respondents (O'Toole & Couch, attorneys; Mr. Della Rovere, on the brief).
No other parties participated in this appeal.
Before Judges BAIME,[2] BROCHIN and EICHEN.
The opinion of the court was delivered by EICHEN, J.A.D.
This is a construction site accident case. The case arose when plaintiff Denni Slack fell approximately ten feet while spackling sheetrock on the cathedral ceiling of a house defendants Thomas and Margaret Whelan were building. The appeal requires us to decide whether a property owner who assumes administrative control over a home construction project owes a duty to an employee of one of the individual contractors hired to complete the project to assure his safety by complying with regulations[3] promulgated under the Occupational Safety & Health Act, 29 U.S.C. § 651 to 678 (OSHA). Plaintiff contends that defendants owed a legal duty to assure him a safe worksite, and that the violation of OSHA regulations affords him a tort remedy. The motion judge disagreed and granted defendants' motion for summary judgment dismissing plaintiff's personal injury negligence action.
We conclude the judge properly granted defendants' summary judgment dismissing the complaint, see Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523, 666 A.2d 146 (1995), and affirm the summary judgment.
The pertinent facts are not complicated or contested. Defendants owned a small, undeveloped lot in Warren County and contracted with Trident Builders, Inc. (Trident) to act as their "general contractor" in building a house on the lot. Trident agreed to build the house for $80,000, which included labor and materials, but not landscaping or a septic system. When Trident failed to perform, defendants, who had no training or experience in home construction, took over the project. Using the plans prepared by an architect, they obtained the building permits and financing required for the construction; hired and paid the various contractors to build *1019 the house; and assumed the numerous administrative responsibilities required to coordinate the project.
On October 10, 1997, plaintiff arrived at the house to spackle the sheetrock that another Quality employee had just installed. He was part of a two-man spackling team. Plaintiff had been working for Quality for approximately one year before the accident. According to plaintiff's deposition testimony, he had been spackling for about an hour, using the ladders and scaffolding provided by Quality for the work, when he realized he could not reach the uppermost part of the cathedral ceiling. Consequently, he "climbed into the rafters" and, using a board that had been placed there by another Quality employee,[4] began to spackle the ceiling. After about forty-five minutes of working in the rafters, plaintiff heard the board beneath him break, and he fell approximately ten feet to the floor.
Although his "boss" was on the construction site from the beginning of the work day, plaintiff apparently did not ask him what to do when the scaffolding proved inadequate to reach the highest point of the cathedral ceiling. Defendants were not present at the time of the accident and did not learn of it until a few weeks later.
Defendants did not have a contractual arrangement with Quality or any other contractor requiring defendants to oversee either the performance of their work, or OSHA compliance, and defendants did not provide such oversight or in any way supervise the actual work of the individual contractors they hired. With the exception of Mr. Whalen, who did the plumbing work and installed the septic system at the house, defendants did not participate in the construction. In addition, defendants were not present at the construction site during the workday. At night, however, their son Patrick, who had no experience in home construction,[5] went to the house to inspect the daily progress of the work. Mrs. Whalen, and her fifteen year old son Vincent, also attended the site at night to "clean up" any debris left by the contractors.
As to the spackling work performed by plaintiff, defendants provided no equipment or assistance of any kind to plaintiff and, in fact, were not even present during the spackling of the ceiling. Indeed, they were completely unaware of the fact that Quality had placed a board in the rafters or that plaintiff was using it as a platform from which to spackle the ceiling.
Based on the foregoing facts and circumstances, as previously noted, the motion judge granted defendants summary judgment. The judge essentially concluded that defendants owed no duty to protect plaintiff from the risk of harm presented by his climbing into the rafters and using the board left there by another Quality employee to finish the spackling of the ceiling. The judge also impliedly concluded that even if such a duty existed, there were no facts in the record to support the claim that defendants had breached that duty.
Determining the scope of tort liability is the responsibility of the courts, and "[t]he actual imposition of a duty of care and the formulation of standards defining such a duty derive from considerations of public policy and fairness." Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439, 625 A.2d 1110 (1993). In Hopkins, the Court reminded us that it "has carefully refrained from treating questions of duty in a conclusory fashion, recognizing *1020 that `[w]hether a duty exists is ultimately a question of fairness.'" Ibid. (citations omitted). Recently, in Alloway v. Bradlees, Inc., 157 N.J. 221, 230, 723 A.2d 960 (1999), a construction site accident case, the Court repeated that principle.
In Alloway, the Court explained that general negligence principles govern the determination of whether a legal duty should be imposed on a contractor for injuries sustained by another contractor's employee. Ibid. In reaching that conclusion, it recited several factors, relying on Hopkins, supra, stating that although "the foreseeability of the risk of injury" is the major consideration for imposing a tort duty, additional factors should be considered, such as "`the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution.'" Alloway, supra, 157 N.J. at 230, 723 A.2d 960 (quoting Hopkins, supra, 132 N.J. at 439, 625 A.2d 1110). Before a duty will be imposed, the Court indicated that these factors must be identified, weighed and balanced. Ibid. The Court further indicated that "the analysis leading to the imposition of a duty of reasonable care is `both fact specific and principled.'" Ibid. (quoting Hopkins, supra, 132 N.J. at 439, 625 A.2d 1110).
In Alloway, the Court imposed a duty on a subcontractor for injuries sustained by an employee of a different subcontractor. In doing so, the Court re-emphasized the principle that the decision to impose a duty of care is ultimately one of fairness and policy. Alloway, supra, 157 N.J. at 230, 723 A.2d 960; see also Carvalho v. Toll Bros. & Developers, 143 N.J. 565, 573, 675 A.2d 209(1996).
These were the facts of Alloway that persuaded the Court to conclude it was fair to impose a duty. A paving contractor was contractually responsible for constructing a special exterior ramp for loading purposes on a construction site for a new Shop Rite Supermarket. The paving contractor had engaged an excavating contractor to deliver paving materials using the excavating contractor's truck and driver. The principal of the excavating contractor, who was also a foreman for the paving contractor, undertook to supervise the paving crews because he had direct knowledge of the work requirements. Alloway, supra, 157 N.J. at 226, 233, 723 A.2d 960. The plaintiff was the truck driver for the excavating contractor. The day before the plaintiff was to deliver crushed stone to the site, she noticed a mechanical problem with the dump truck she was operating. Id. at 226-27, 723 A.2d 960. After relaying the problem to both her supervisor and the paving contractor foreman, the foreman notified her that a defect had been found and would be repaired by the next day. Id. at 227, 723 A.2d 960. Plaintiff was unaware that the defect had not been repaired, and as a result, she was seriously injured while attempting to use the truck. Id. at 227-28, 723 A.2d 960.
Based on the foregoing facts, the Court determined that the risk of injury was "clearly foreseeable" because the paving contractor "knew that the truck was defective, and had attempted to correct the defect." Id. at 232, 723 A.2d 960. The Court also noted the "substantial and close relationship" between the paving contractor and the excavating contractor. Ibid. That relationship, the Court observed, "created both the opportunity and capacity" on the part of the paving contractor "to exercise authority and control over the equipment" of the excavating contractor if safety concerns were implicated. Id. at 233, 723 A.2d 960. Since the paving contractor had actually "undertaken remedial measures" to correct the defect in the truck prior to the accident, the Court concluded that "fairness and policy" impelled the imposition of a duty of reasonable care on the paving contractor to assure the safety of the excavation contractor's employee at the worksite. Ibid.
A similar result was obtained in Carvalho, supra, another construction site accident case. There, the Township of
*1021 West Windsor retained an engineering firm (the engineer) to prepare plans for and supervise the progress of a sewer service construction project. During the construction, a trench in which an excavation subcontractor's employee was working collapsed and the employee was killed. Carvalho, supra, 143 N.J. at 569, 675 A.2d 209. The employee's widow sued the engineer, among others, alleging that the engineer had breached its duty to maintain safe conditions at the worksite. Id. at 572, 675 A.2d 209.
Applying general negligence principles, the Carvalho Court concluded that the engineer owed plaintiff a duty to exercise reasonable care to avoid the risk of harm that resulted in the worker's death. Id. at 577, 675 A.2d 209. The Court recognized and discussed the factors previously noted, observing that the engineer was contractually required to be at the site everyday to monitor the progress of the work. Id. at 577-78, 675 A.2d 209. In addition, the Court pointed out that the contract between the township and the general contractor for the project gave the engineer the authority to stop the work at any time, id. at 576, 675 A.2d 209, remarking that the engineer's supervisory responsibility "necessarily entailed the observation of existing conditions and the actual performance of the work undertaken by the workers at the site." Id. at 574, 675 A.2d 209. The Court further adverted to the fact that the engineer was aware that similar trenches had collapsed in other areas of the construction site several times due to unstable trench conditions. Id. at 576, 675 A.2d 209. The Court determined that the engineer's responsibilities for ensuring compliance with the plans and rate of work progress created an "overlap of work progress considerations and work-safety concerns" justifying imposition of a duty of care to prevent the risk of harm. Id. at 575, 675 A.2d 209.
The present case presents a very different factual scenario. Defendants had no contractual agreement with Quality, or any other contractor on the project, to supervise the work or provide safety oversight. Further, defendants were not present during the actual work day, nor were they required to be on site. Neither did defendants participate in, nor interfere with, the means or method of the spackling work being performed by plaintiff. For instance, the scaffolding equipment was furnished by Quality, and not defendants. In addition, defendants were completely unaware of the methods plaintiff was utilizing to spackle the ceiling, and knew nothing of the risk of harm plaintiff himself created by climbing into the rafters and standing on the board. Indeed, defendants were unaware that Quality had left the wooden boards in the ceiling rafters. Hence, the risk of harm was not sufficiently foreseeable to justify imposing a duty of reasonable care on defendants. Carvalho, supra, 143 N.J. at 573, 675 A.2d 209.
Unlike Carvalho, defendants had no opportunity or capacity to exercise control over the manner or means by which plaintiff chose to perform the spackling work. To the contrary, the control of plaintiff's work fell squarely within Quality's expertise, knowledge, and experience as a professional dry wall company. On these facts, defendants could reasonably assume that Quality was sufficiently skilled and knowledgeable to assure plaintiff's safety in performing the spackling work.
Given the nature of the risk, the lack of foreseeability of that risk, and the relationship between plaintiff and defendants, which in no way implicated worker safety concerns or suggested that defendants had the capacity to control plaintiff's performance, we conclude, as a matter of "fairness and policy," that defendants had no legal duty to exercise reasonable care for plaintiff's safety at the worksite.
Plaintiff's reliance on our holding in Meder v. Resorts Intern. Hotel, Inc., 240 N.J.Super. 470, 475-76, 573 A.2d 922 (App. Div.1989), certif. denied, 121 N.J. 608, 583 A.2d 310 (1990), is unavailing. There, we held that violations of OSHA regulations *1022 by a property owner who has assumed the responsibilities of a general contractor can support a tort claim against the property owner regardless of whether the property owner had assumed control over the direction of the manner in which the delegated tasks were carried out. Id. at 477, 573 A.2d 922. However, this court decided Meder before the Supreme Court issued its opinion in Alloway. A careful reading of Alloway makes it clear that the Court rejected Meder's attempt to impose a duty of care on an owner/contractor based solely on a finding that OSHA regulations had been violated. Quoting our decision in Kane v. Hartz Mountain Indus., Inc., 278 N.J.Super. 129, 143, 650 A.2d 808 (App. Div.1994), aff'd o.b., 143 N.J. 141, 669 A.2d 816 (1996), the Court stated, in relevant part:
[T]he paramount consideration of a worker's safety is more clearly placed in focus by a more comprehensive rule which makes the primary contractor and each tier of subcontractor responsible for the safety of the workers under them on general negligence principles. This appears preferable to limiting liability to a specific finding of a violation of a regulation, which in some instances may be obscure, vague or difficult to comprehend or apply.
[Alloway, supra, 157 N.J. at 235, 723 A.2d 960.]
The Court further observed that "in the area of workplace safety, the common law provides ample remedial relief that is flexible and adaptive of changing circumstances." Id. at 236, 723 A.2d 960. Accordingly, the Court concluded that although "OSHA regulations are pertinent in determining the nature and extent of any duty of care," their violation "without more does not constitute the basis for an independent or direct tort remedy." Ibid. Stated another way, such violation, in and of itself, does not create a tort duty. Ibid.
Since plaintiff failed to present proof to satisfy any of the factors required by Alloway for determining the existence of a duty, the mere fact that OSHA regulations may have been violated at the worksite is not sufficient to create a legal duty on defendants to have avoided the risk of injury to plaintiff in this case.
In sum, applying general negligence principles, we hold that no tort duty can be imposed for injuries sustained on a construction site by a contractor's employee solely because violations of OSHA regulations have occurred. Even if defendants could be viewed as "general contractors" for the project, because the risk of injury to plaintiff was not objectively foreseeable by defendants, and because no relationship implicating safety concerns existed between plaintiff and defendants, "fairness and policy" preclude imposing a tort duty on defendants.
Lastly, and for essentially the same reasons, we reject plaintiff's contention that defendants had a legal duty to retain an experienced "general contractor" who would have been responsible for safety oversight on the project. Even if defendants had replaced Trident with another "general contractor" to coordinate the construction project, such hiring would not automatically give rise to a tort duty on the part of that contractor to safeguard plaintiff from the risk of harm present in this case. As we stated previously, that determination would require a "fact specific and principled" analysis of all the Alloway factors, applying general negligence principles. Alloway, supra, 157 N.J. at 230, 723 A.2d 960. We repeat what we recently observed in Costantino v. Ventriglia, 324 N.J.Super. 437, 446, 735 A.2d 1180 (App.Div.1999): categories and labels do not create legal duties; they arise only as the result of fairness and policy. See also Hopkins, supra, 132 N.J. 426, 625 A.2d 1110.
Affirmed.
NOTES
[1] Trident Builders, Inc. was not served with the summons and complaint and was therefore dismissed as a party defendant in the action.
[2] Judge Baime did not participate in oral argument. However, the parties consented to his participation in the decision.
[3] The appendix does not contain a copy of any specific OSHA regulations; however, plaintiff's brief lists numerous regulations which he alleges defendants violated.
[4] At oral argument on the summary judgment motion, plaintiff's attorney represented that "We don't have the board but I believe it to be Quality Dry Wall's, but I can't say for certain." Plaintiff's attorney later affirmatively represented that the board was placed on the rafters by one of Quality's workers.
[5] Patrick had been engaged in farm-based excavation projects but had no home construction experience.