975 A.2d 451 (2009)
408 N.J. Super. 362
Dione DeSousa COSTA, Plaintiff-Appellant,
v.
Salvatore GACCIONE and Mariella Gaccione, Defendants-Respondents, and
Copeland Construction, Gemaco Construction Company, and Gemaco Corporation, Defendants.
No. A-6022-07T1.
Superior Court of New Jersey, Appellate Division.
Submitted April 1, 2009.
Decided May 27, 2009.
*452 Keefe Bartels, Red Bank, for appellant (Gerald H. Clark and John E. Keefe, of counsel and on the brief).
Winter & Winkler, P.C., Livingston, for respondents (Jason S. Winkler, on the brief).
Before Judges FISHER, BAXTER and KING.
The opinion of the court was delivered by
KING, P.J.A.D. (retired and temporarily assigned on recall).
Plaintiff appeals the summary judgment dismissal of his claim seeking recovery for injuries sustained on allegedly defective scaffolding at a home construction site. He claims that defendant property owners acted as general contractors, and that their failure to ensure job-site safety constituted negligence and a violation of the Occupational Safety & Health Act, 29 U.S.C.A. § 651-658 (OSHA). Because issues of material fact exist as to defendant Salvatore Gaccione's status as general contractor and his potential negligence, we reverse and remand for trial. We affirm as to his daughter, defendant Mariella Gaccione.

I
This is the procedural background. Plaintiff Dione DeSousa Costa filed a complaint on March 15, 2006 and later filed an amended complaint on May 18, 2006 alleging that defendants violated federal and New Jersey law at a construction site by failing to take appropriate safety measures and to enforce OSHA standards. While climbing makeshift scaffolding, plaintiff fell about thirteen feet and sustained serious injury. Defendant Salvatore Gaccione was the developer at the site and plaintiff asserts that he served as the de facto general contractor.
On July 5, 2007 defendants Gaccione moved for summary judgment arguing that no duty obligated them to ensure safety at the project. On August 17, 2007 the judge heard oral argument and granted summary judgment dismissing all claims against defendants Gaccione. On September 27, 2007 plaintiff filed a cross-motion for reconsideration of the summary judgment. After oral argument on November 16, 2007 the judge denied the motion.
*453 As to the other defendants in the case, the denial of reconsideration was not a final order. However, plaintiff eventually settled with these defendants; a stipulation of dismissal filed on July 17, 2008 finalized the earlier summary judgment order.

II
These are the relevant facts. Defendant Salvatore Gaccione[1] is experienced in land development. Some of his construction projects led to housing for his family, while others were sold for profit or were rented for income. Gaccione and his daughter, defendant Mariella Gaccione, purchased property in Lyndhurst for the purpose of demolishing the existing structure to rebuild a residence for Gaccione's two daughters.
Plaintiff asserts that the Gacciones never intended to inhabit the property but rather planned to sell for profit or to rent. Gaccione's interest was ultimately transferred to his other daughter. Thus, title is held by Gaccione's two daughters.
In preparation for the project, Gaccione sought building permits as an "owner in fee," and listed Copeland Construction (Copeland)a company with which he frequently did businessas the contractor. Apparently the municipality needed a contractor's name for the approval form. Gaccione claimed he had permission to use Copeland's name because it had a license to do masonry work. On the permit request form, Gaccione stated that he considered himself the "person responsible for the work" and recognized his name on the form as the person "so responsible."
Gaccione allegedly performed many of the general contractor functions; he hired various subcontractors and an architect, scheduled their work, and purchased building materials which the contractors requested. Gaccione frequented the job site, oversaw the work and performed some managerial tasks; however, he maintains that he did "not retain control over the means or methods of work ... or [] work-site safety," but rather relied on the contractors' "professional experience" to perform the work correctly and safely. Still, the principal of defendant Copeland testified that Gaccione was the general contractor at the site. Indeed, for the purposes of summary judgment, the trial court assumed Gaccione was in fact the general contractor.
Among the contractors hired was defendant Gemaco Construction Company (Gemaco) to complete the framing. Gemaco then subcontracted the framing work and hired a company called LeBrau Framing (LeBrau); plaintiff was an employee of LeBrau and was assigned to the Gaccione job site.
Plaintiff's accident occurred on Tuesday, November 23, 2004 when he was directed to use makeshift scaffolding to install a micro-beam structure in the foyer of the building. The scaffolding structure stood a total of thirteen to fourteen feet high, was six to seven feet long, and about two to three feet wide. It was made from scrap wood assembled at the job site; and access to it was facilitated by nailing pieces of wood to the studs on the wall. While plaintiff was descending the make-shift scaffolding structure to get materials, he grabbed a brace in the wall for support; this brace came loose and he fell about thirteen feet to the ground. He sustained serious injury.
Plaintiff testified that he was not instructed to avoid the scaffolding; moreover, he noted that all the other workers that used the scaffolding were similarly *454 unwarned. Plaintiff also testified that he did not have any workplace safety training that could have helped him recognize the hazard.
The Gacciones and Copeland admitted that the job site had no safety supervision or express safety rules. Gaccione testified that safety was not discussed, that there was no written safety policy, that there were no rules relating to the scaffolding, that he was never instructed or certified by OSHA, and that he did not investigate plaintiff's accident.
The motion judge summarily dismissed plaintiff's claim with regard to the Gacciones. Principally, the judge relied upon Slack v. Whalen, 327 N.J.Super. 186, 742 A.2d 1017 (App.Div.), certif. denied, 163 N.J. 398, 749 A.2d 371 (2000), and Alloway v. Bradlees, Inc., 157 N.J. 221, 723 A.2d 960 (1999), and found that: a duty of care is not dispositively placed on an owner or contractor "based solely on a finding that OSHA regulations had been violated"; a fair reading of Slack and Alloway showed that "although OSHA regulations are pertinent in determining the nature and extent of any duty of care, their violation without more does not constitute the basis for an independent or direct tort remedy"; although Gaccione may have had more construction knowledge than the average person, his involvement in development consisted of building three homes over the last "say, 20 years" that were used almost exclusively for familial purposes; Gaccione was not a real estate developer and he was entitled to rely on the subcontractor, Gemaco, to address work site safety concerns, and thus did not have a duty to determine whether or not the scaffolding created a risk of injury; and Gaccione reasonably verified that Gemaco was adequately insured when taking the job.
With regard to Copeland which settled, the judge determined that there at least existed a genuine issue of material fact regarding its possible liability, specifically with regard to granting Gaccione permission to list Copeland as the general contractor when applying for a permit.

III
The New Jersey Supreme Court has posed the issue in this type of construction case as follows:
[Whether] a reasonable jury weighing the evidence in plaintiff's favor could determine the existence of facts that, based on the foreseeability of the risk of injury, the relationship of the parties, and the opportunity to take corrective measures, would support the determination that there was a duty of care owed to plaintiff that was breached by defendant[s].
[Alloway, supra, 157 N.J. at 240, 723 A.2d 960.]
On appeal, plaintiff asserts that OSHA compliance was mandatory on the job site, that a jury could find that Gaccione served as the general contractor and was thus responsible for the lack of safety measures, and that the judge's finding that Gaccione owed no duty for safety was inconsistent with controlling precedent and in conflict with federal workplace regulation.
The two principal cases that provide the basis on which this appeal is considered are Alloway, a Supreme Court case, and Slack, a case decided by this court that interprets Alloway in the context of facts similar to the matter now before us on this appeal.
The dispute in Alloway involved an accident that occurred during the conversion of a warehouse into a Shop-Rite food store. 157 N.J. at 226, 723 A.2d 960. The contractor hired a company to manage and oversee the interior construction; in turn, *455 the project manager of this company hired a subcontractor to complete a paving and grading project. This subcontractor then subcontracted to another company to obtain the vehicles that would be used to transport the paving materials.
When the driver of the truck, the plaintiff, delivered a truck-load of stone to the job site, the lever on the bottom of the truck that lifts the bed would not activate. Id. at 227, 723 A.2d 960. Plaintiff had experienced this same problem the day before; the truck had been fixed once, and then on a subsequent use, it had to be manually activated with a large piece of steel. Ibid. On the day of the accident, after the lever supposedly had been fixed but was not, the lever again failed; plaintiff attempted to manually activate it with her hand and she was pulled into the machine by her hand and hair and severely injured. Id. at 228, 723 A.2d 960.
The Court narrowed the issue to whether the paving subcontractor owed a duty as a "prime or general contractor" to assure safety on the work site, and whether this duty extended to the truck which caused the plaintiff's injury. Id. at 228-29, 723 A.2d 960. In answering this question, the Court recognized that "the basis for liability against a general contractor for the safety of the employees of a subcontractor should be found in `a more comprehensive rule' reflecting `general negligence principles' rather than simply the existence of an OSHA violation." Id. at 230, 723 A.2d 960 (citing Kane v. Hartz Mountain Indus. Inc., 278 N.J.Super. 129, 143, 650 A.2d 808 (App.Div.1994), aff'd o.b., 143 N.J. 141, 669 A.2d 816 (1996)). Thus, in determining whether a duty exists, courts should consider the foreseeability of injury, the relationship of the parties, the nature of the risk, the opportunity and the ability to exercise care, and other public interest concerns. Id., at 230, 723 A.2d 960 (citing Carey v. Lovett, 132 N.J. 44, 57, 622 A.2d 1279 (1993); Weinberg v. Dinger, 106 N.J. 469, 485, 524 A.2d 366 (1987); Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439, 625 A.2d 1110 (1993)). Overall, the court must look to "basic fairness" principles to determine whether imposition of a duty is appropriate. Hopkins, supra, 132 N.J. at 439, 625 A.2d 1110.
The Court also considered the relevance of OSHA violations in determining the scope of the duty owed. Alloway, supra, 157 N.J. at 233-34, 723 A.2d 960. Agreeing with the holdings of this court in Kane and Meder v. Resorts International Hotel, Inc., 240 N.J.Super. 470, 477, 573 A.2d 922 (1989), certif. denied, 121 N.J. 608, 583 A.2d 310 (1990), the Court found that "OSHA regulations were not intended to impose direct liability or provide an independent tort remedy." Alloway, supra, 157 N.J. at 235, 723 A.2d 960. A finding of an OSHA violation does not "ipso facto constitute a basis for assigning negligence as a matter of law," Kane, supra, 278 N.J.Super. at 144, 650 A.2d 808; however, OSHA regulations are pertinent in determining the "nature and extent of any duty of care." Alloway, supra, 157 N.J. at 236, 723 A.2d 960.
Under this rubric, the Court ruled that the matter should not have been dismissed on summary judgment; there was sufficient evidence to show that a duty of care may have existed and that it was breached. Id. at 240, 723 A.2d 960.
In Slack, defendants were husband and wife homeowners who hired a contractor to build a home for them in exchange for $80,000. Slack, supra, 327 N.J.Super. at 189, 742 A.2d 1017. When the contractor failed to perform on the contract, the defendants, who had no training or experience in home building, decided to continue the project themselves. Ibid. They took the plans that had been prepared by an *456 architect, they obtained requisite licenses and financing, hired various contractors for the building job, and assumed responsibility for administrative and coordinative tasks. Ibid.
The plaintiff in Slack was a subcontractor's employee who came to the defendants' home to spackle the sheetrock which another employee had installed. Ibid. Using ladders and scaffolding that had been provided by his employer, the plaintiff was able to spackle most areas except for the uppermost portion of the cathedral ceiling. Ibid. To reach this area, the plaintiff "climbed into the rafters" and stood on a board that had been left there by another employee. Ibid. Forty-five minutes later, the board broke beneath him and he fell approximately ten feet. Id. at 190, 742 A.2d 1017.
Thus, the issue, similar to the case before us, was
whether a property owner who assumes administrative control over a home construction project owes a duty to an employee of one of the individual contractors hired to complete the project to assure his safety by complying with regulations promulgated under the Occupational Safety & Health Act, 29 U.S.C.A. § 651-658 (OSHA).
[Id. at 188, 742 A.2d 1017.]
We applied the legal analytical framework expressed in Alloway and decided that the defendants did not owe a duty of care to the plaintiff. The defendants had no contractual agreement with the contractor for which the plaintiff worked; they did not agree to supervise the work or ensure safety. Id. at 194, 742 A.2d 1017. Moreover, the defendants were not required to be on the job site, they did not frequent the site daily, and they did not participate in or interfere with the spackling. Ibid. The defendants also did not supply the scaffolding equipment, they were unaware of the method of spackling the plaintiff was using, and they did not understand the risk of harm in the plaintiff's method of reaching the rafters. The defendants did not even know that boards were left in the rafters. Ibid. As a result, we found that the harm was not sufficiently foreseeable to impose a duty on the defendants in this context. Ibid.
This court also found that the defendants did not have a reasonable
opportunity or capacity to exercise control over the manner or means by which plaintiff chose to perform the spackling work. To the contrary, the control of plaintiff's work fell squarely within [the contractor's] expertise, knowledge, and experience as a professional.
[Ibid.]
Thus, the defendants were entitled to rely on the contractor's skill and knowledge in performing his spackle work.
Additionally, this court reinforced the Supreme Court's assertion that a duty of care is not per se imposed solely on a finding of an OSHA regulatory violation. Id. at 195, 742 A.2d 1017. The common law was held to provide "ample remedial relief that is flexible and adaptive of changing circumstances." Ibid. (citing Alloway, supra, 157 N.J. at 236, 723 A.2d 960).
Without foreseeability of the accident and any relationship implicating safety concerns, the defendants in Slack, in "fairness," owed no duty of care. This court even clarified that "if defendants could be viewed as `general contractors' for the project, because the risk of injury to plaintiff was not objectively foreseeable by defendants, and because no relationship implicating safety concerns existed between plaintiff and defendants, `fairness and policy' preclude imposing a tort duty on defendants." Id. at 199, 742 A.2d 1017.

*457 IV
Plaintiff also contends that compliance with OSHA regulations is necessary on every job site and the judge erred by dismissing the Gacciones as they served as a general contractor and should have been held responsible for non-compliance. The Gacciones counter by urging that the OSHA regulations are regulatory "safety mandates ... and do not impose direct liability or provide an independent tort remedy." Rather, they assert that OSHA regulations are only relevant in the determination of the factors considered in a negligence suit.
In accordance with the Court's ruling in Alloway and this court's reiteration in Slack, defendants correctly state OSHA's place in the analysis of this type of matter. 29 U.S.C.A. § 653(b)(4) states that
[n]othing in this Act shall be construed to supersede or in any manner affect any workmen's compensation law or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment.
The Court in Alloway also clearly held that "violation of OSHA regulations without more does not constitute the basis for an independent or direct tort remedy." Alloway, supra, 157 N.J. at 236, 723 A.2d 960. Still, OSHA regulations are "pertinent in determining the nature and extent of any duty of care," ibid.; "`[c]ompliance with an OSHA regulation does not in and of itself preclude a finding of negligence,' and, conversely, non-compliance with an OSHA regulation does not, as such, preclude a finding that there was no negligence." Id. at 237, 723 A.2d 960 (quoting Kane, supra, 278 N.J.Super. at 142, 650 A.2d 808). Such a violation "does not establish negligence per se." Id. at 234, 723 A.2d 960.
The Court has interpreted OSHA regulations to provide mandatory standards for workplace safety. However, non-compliance with these standards does not alone create a viable cause of action, nor does it necessarily place a tort duty of care on the general contractor. Rather, violations of OSHA are to be considered with other "fairness" factors in determining the existence of a duty and the duty's scope. Id. at 235, 723 A.2d 960.
OSHA was created for regulatory enforcement, not for independent civil remediation. Alloway, supra, 157 N.J. at 235, 723 A.2d 960. The Court agreed with the reasoning in Kane, where we adopted the following approach to understanding OSHA's role in determining negligence:
[T]he paramount consideration of a worker's safety is more clearly placed in focus by a more comprehensive rule which makes the primary contractor and each tier of subcontractor responsible for the safety of workers under them on general negligence principles. This appears preferable to limiting liability to a specific finding of a violation of a regulation, which in some instances may be obscure, vague or difficult to comprehend.
[Kane, supra, 278 N.J.Super. at 143, 650 A.2d 808.]
The heart of plaintiff's liability argument is that Gaccione was the de facto general contractor at the job site, that he was a person engaged in the business of real estate development, and that as such, he had the requisite control and a duty to ensure safety under OSHA regulations. In support of this argument, plaintiff asserts that Slack represents a narrow exception and is factually quite different from the case before us. Defendants respond *458 by drawing a parallel between the facts in Slack and this case to conclude that they were not general contractors and cannot be held liable under OSHA or any general negligence principles.
According to the overall "fairness" framework introduced in Alloway and applied in Slack, the trial court was required to look at factors such as the foreseeability of injury, the relationship of the parties, the nature of the risk, the opportunity and the ability to exercise care, and the public interest to see if defendants owed a duty of care to the plaintiff. Alloway, supra, 157 N.J. at 230, 723 A.2d 960 (citing Carey, supra, 132 N.J. at 57, 622 A.2d 1279; Weinberg, supra, 106 N.J. at 485, 524 A.2d 366; Hopkins, supra, 132 N.J. at 439, 625 A.2d 1110).
Again, the motion judge found that: a duty of care is not dispositively placed on an owner or contractor "based solely on a finding that OSHA regulations had been violated"; a fair reading of Slack and Alloway shows that "although OSHA regulations are pertinent in determining the nature and extent of any duty of care, their violation without more does not constitute the basis for an independent or direct tort remedy"; although Gaccione may have had more construction knowledge than the average person, his alleged involvement in development consisted of building three homes over the last "say, 20 years" that were used almost exclusively for family purposes; Gaccione was thus not a traditional real estate developer and he was entitled to rely on the framing subcontractor, Gemaco, to address work site safety concerns, and thus did not himself have a duty to determine whether or not the scaffolding created a risk of injury; and Gaccione reasonably verified that Gemaco was adequately insured when taking the job.
Reviewing the facts in a light most favorable to plaintiff, we reverse and remand for trial as to Gaccione. Although the judge correctly interprets OSHA's place in an ordinary common-law negligence analysis, the judge did not lend enough weight to the distinguishing factors between Slack and the current case.
In Slack, the property owners were left without a general contractor after that contractor failed to perform. Consequently, they attempted to rescue their building plans by continuing to engage subcontractors to do the work. In the case before us, Gaccione was not forced into such a situation as it appears that he never hired a contractor to oversee the entire operation in the first place. He may have placed Copeland's name on the permits as general contractor as a personal convenience, but there is sufficient factual evidence in the record to support the conclusion that Gaccione, on his own volition, acted as the de facto general contractor and could at least be found jointly liable with others sharing control of the locus of the accident.
Another difference between Slack and this case is that the property owners in Slack did not oversee the workplace or themselves become involved in the construction. Although Gaccione may not have taken direct control at the job site, he did visit the site daily and oversaw operations. He purchased materials requested by builders and actively discussed the building plans with the workers that he hired. As such, he performed many of the duties of a general contractor.
Yet another distinguishing factor in this case is Gaccione's construction history. Although plaintiff's assertion that Gaccione was an experienced real estate developer seems an overstatement, Gaccione's experience and general understanding of the building process may not be ignored, particularly when deciding a summary judgment motion. Moreover, comparing Gaccione's knowledge and history to that of *459 the property owners in Slack, Gaccione clearly possessed more requisite knowledge.
Despite the many factual similarities between Slack and the case before us, the differences in the two, as noted above, are sufficient, when viewing the evidence in the light most favorable to plaintiff, to create questions of material fact relating not only as to Gaccione's role as a de facto general contractor, but also as to the foreseeability of the injury, the relationship of the parties, and other negligence and control considerations.
Slack represents an exceptional situation where this court held that the property owners could not be held liable as general contractors due to the specific factual circumstances. Such circumstances do not exist here relative to Gaccione. The judge correctly assumed at the summary judgment motion that Gaccione was in the status of a general contractor; in so doing, however, he should have recognized that sufficient evidence existed to create genuine issues of material fact to warrant a trial on the issues of control and negligence.
To the best of everyone's knowledge, however, Mariella Gaccione remained uninvolved with the actual construction process, perhaps even more so than the property owners in Slack. Therefore, the summary dismissal of claims against her is affirmed.
Reversed as to Salvatore Gaccione and remanded for trial; affirmed as to Mariella Gaccione.
NOTES
[1] All further references to Gaccione signify Salvatore Gaccione.