**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3622-18T3

MICHAEL Z. JONES

    Plaintiff-Appellant,

v.

DJS CONSTRUCTION and
SERGIO CASTRO, individually
and doing business as DJS
CONSTRUCTION, MELROSE
COURT HOMES, LP, CAPTIAL
BANK OF NEW JERSEY,
CARLSON BROTHERS, INC.,
CITY OF VINELAND,
VINELAND HOUSING
AUTHORITY, VINELAND
HOUSING DEVELOPMENT
CORPORATION, CITY OF
VINELAND/LICENSES AND
INSPECTIONS: UNIFORM
CONSTRUCTION CODE,
EASTERN HIGHREACH
COMPANY, INC., JOSE CARL
HERNANDEZ-RODRIQUEZ,

    Defendants,

and

PROVIDENCE BUILDING
COMPANY, INC.,

    Defendant-Respondent.

_____

Submitted October 20, 2020 – Decided December 16, 2020

Before Judges Gilson and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Docket No. L-0518-16.

LaBletta and Walters, LLC, and Law Office of Conrad J. Benedetto, attorneys for appellant (Christian P. LaBletta and Conrad J. Benedetto, on the briefs).

Bennett Bricklin & Saltzburg LLC, attorneys for respondent (Wayne Partenheimer, on the brief).

PER CURIAM

Plaintiff Michael Z. Jones, who was injured by a forklift while working on a construction site, appeals from the trial court's order granting summary judgment in favor of defendant Providence Building Company, Inc. (Providence).  Plaintiff argues that the trial court erred in finding that Providence did not owe a duty of care to plaintiff.  We affirm because Providence did not breach any duty it may have owed to plaintiff.

On this summary-judgment appeal, we view the facts in a light most favorable to plaintiff.  Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 536

(1995). We give deference to a trial court's factual findings but not to the application of law to those findings. Lee v. Brown, 232 N.J. 114, 126-27 (2018). We apply the same legal standard used by the trial court. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018). That standard was articulated by our Supreme Court in Brill: "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." 142 N.J. at 540. See also Grande v. Saint Clare's Health Sys., 230 N.J. 1, 24 (2017).

Plaintiff was employed by Carlson Brothers, Inc. (Carlson) as a laborer, working at the construction site for a housing project. Carlson was the general contractor for that project and needed additional carpenters to help finish the siding work on the project. A Carlson representative contacted Kenneth Norman, a Providence vice president, and asked if Providence could provide two carpenters who could work on Carlson's project.[1] Because Providence did not

---

[1] The Carlson witness testified that he had requested carpenters who could do siding work. Norman testified that the Carlson representative had asked for carpenters, with no specifics as to job duties, and had not asked for someone who could drive a forklift. Their testimony collectively demonstrates that the Carlson representative did not ask for someone who could operate a forklift.

A-3622-18T3

have any available carpenters, Norman contacted a representative of DJS Construction (DJS) and asked if DJS could provide a couple of carpenters to Carlson. When the DJS representative told Norman that DJS could provide the carpenters, Norman did not ask about their qualifications or training. DJS subsequently sent two carpenters to Carlson's project. DJS charged Providence an hourly rate for the carpenters; Providence charged Carlson a higher hourly rate for them. In its invoice, Providence charged Carlson for "2 Carpenters," with no reference to forklifts or forklift operators. When the carpenters arrived at the worksite, Todd Bowling, who was Carlson's on-site project superintendent and plaintiff's supervisor, had no expectation that they would operate forklifts.

On the day of the accident, Bowling directed plaintiff to remove drywall debris from some units and told one of the DJS carpenters to use a telehandler forklift to bring a trash bin to one of the units, dump the trash bin when it was full, and move it to the next unit. Even though subcontractors were permitted to operate forklifts only if Bowling had determined that they were competent to do so, he did not ask the DJS carpenter if he knew how to operate one.

While he was directing the DJS carpenter who was operating the forklift, plaintiff stood approximately five feet away from the forklift on the passenger side. Plaintiff believed that the carpenter could see him and knew where he was

standing. As the carpenter drove the forklift forward, plaintiff was trying to turn around when his right foot was caught in the right rear tire of the forklift and he fell. Plaintiff suffered severe injuries as a result.

Plaintiff contends that Providence breached a duty of care it owed to him to determine that the workers it provided to Carlson were competent and qualified and breached that duty when it failed to ask DJS for any information regarding its carpenters, their qualifications, or their training. Plaintiff also argues that under OSHA regulations Providence, like Carlson, had a duty to make the worksite safe. The trial court granted Providence's summary-judgment motion, finding that Providence, having been asked by Carlson to provide carpenters, did not have a duty to plaintiff regarding the DJS carpenter's forklift-operating skills.

"[G]eneral negligence principles govern the determination of whether a legal duty should be imposed on a contractor for injuries sustained by another contractor's employee." Slack v. Whalen, 327 N.J. Super. 186, 191 (App. Div. 2000). To prevail in a negligence case, a plaintiff must demonstrate that (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached that duty; (3) the defendant's breach of its duty actually and proximately caused the plaintiff's injury; and (4) the plaintiff sustained damages. Fernandes v. DAR

5

Dev. Corp., 222 N.J. 390, 403-04 (2015). Whether a defendant owes a plaintiff a duty and the scope of that duty are legal questions. Shields v. Ramslee Motors, 240 N.J. 479, 487-88 (2020).

Determining whether a duty exists "involves identifying, weighing, and balancing several factors—the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution." Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439 (1993). The foreseeability of an injury "is 'crucial' in determining whether a duty should be imposed." J.S. v. R.T.H., 155 N.J. 330, 338 (1998) (quoting Carter Lincoln-Mercury, Inc. v. EMAR Grp., Inc., 135 N.J. 182, 194 (1994)).

"Foreseeability requires a determination of whether the defendant was reasonably able to ascertain that his allegedly negligent conduct could injure the plaintiff in the manner it ultimately did." Robinson v. Vivirito, 217 N.J. 199, 212 (2014). Foreseeability "is the major consideration for imposing a tort duty, [but] additional factors should [also] be considered, such as 'the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care and the public interest . . . .'" Slack, 327 N.J. Super. at 191 (quoting Alloway v. Bradlees, Inc., 157 N.J. 221, 230 (1999)). An OSHA violation may be considered with those factors in determining the existence and scope of a

duty but does not alone create a "tort duty of care." Costa v. Gaccione, 408 N.J. Super. 362, 372-73 (App. Div. 2009); see also Tarabokia v. Structure Tone, 429 N.J. Super. 103, 120 (App. Div. 2012). "Whether a duty exists is ultimately a question of fairness." Goldberg v. Hous. Auth. of Newark, 38 N.J. 578, 583 (1962). See also Olivo v. Owens-Illinois, Inc., 186 N.J. 394, 401 (2006).

Under that standard, did Providence have a duty? It had a duty to provide competent carpenters. And it met that duty. The record is devoid of any evidence that the DJS worker was not a competent carpenter. To the contrary, project superintendent Bowling testified that he had not observed any problems with his work as a carpenter. The forklift accident may be an indication of the carpenter's lack of forklift-operating skills. It is not evidence of his incompetency as a carpenter.

Providence did not have a duty to provide competent forklift operators. To impose that duty on Providence would be unfair. Carlson asked Providence to provide carpenters, not equipment operators. As Providence's expert stated, the "two trades are entirely different and require different specialty training – therefore they are not interchangeable in skills, abilities and/or training." According to that expert, "[i]n union construction fields, the two different trades can't even be in the same union," with forklift operators in the operating

A-3622-18T3

engineers' union and carpenters in the carpenters' union. Plaintiff's counsel speculated during oral argument before the trial court that "everybody in the trade uses a telehandler." His speculation, unsupported by any expert or lay-witness testimony, is not sufficient to create a genuine issue of material fact under Brill, 142 N.J. at 540.

Plaintiff faults Providence for not asking DJS for information about its carpenters' qualifications or training. Questions about their carpentry qualifications or training would not have shed any light on their ability to operate forklifts. Providence had no reason to know that Carlson needed forklift operators when it had requested carpenters or that Carlson would use the skilled carpenters it had requested as forklift operators. Providence could not foresee that failing to ask DJS about its carpenters' qualifications would lead to a forklift accident because it could not foresee that the carpenters would be used as forklift operators. Thus, Providence had no reason and no duty to ask DJS about its carpenters' ability to operate forklifts.

Because Providence did not have a duty to provide qualified forklift operators and because it fulfilled the duty it had to provide competent carpenters, we affirm.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3622-18T3