**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2428-22

ESTEFANO FRANCHINI,

    Plaintiff-Appellant,

v.

MARCH ASSOCIATES
CONSTRUCTION, INC. and
GLENPOINTE ASSOCIATES IV,
LLC,

    Defendants-Respondents,

and

MARCH ASSOCIATES
CONSTRUCTION, INC.,

    Defendant/Third Party
    Plaintiff-Respondent,

v.

BENDER ENTERPRISES, INC.
a/k/a BENDER ELECTRIC,

    Third-Party Defendant.

_____

Submitted April 23, 2024 – Decided July 16, 2024

Before Judges Sumners and Perez Friscia.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-8065-18.

Ginarte Gallardo Gonzalez & Winograd, LLP, attorneys for appellant (John Ratkowitz, on the briefs).

Law Offices of James H. Rohlfing, attorneys for respondents (D. Scott Conchar, on the brief).

PER CURIAM

Plaintiff Estefano Franchini was injured at a hotel construction site in Teaneck when the ladder he was on slipped and fell down. At the time, Franchini was employed by electrical sub-contractor Bender Enterprises, Inc. Defendant March Associates Construction, Inc. was general contractor for the hotel owner defendant Glenpointe Associates IV, LLC.

Franchini appeals the motion court's summary judgment dismissal of his negligence claims against March Associates.[1] The court held March Associates did not owe a duty of reasonable care to Franchini. We reverse because we

---

[1] The motion judge also granted summary judgment dismissal of claims against Glenpointe, which Franchini did not oppose. Although March Associates and Glenpointe are both named in the merits brief opposing Franchini's appeal, the brief only raises arguments concerning March Associates because Franchini only appeals the summary judgment granted to March Associates.

conclude that as a matter of law, March Associates owed Franchini a duty of care due to the contractual agreements between Glenpointe, March Associates, and Bender Enterprises, and there are genuinely disputed material facts as to whether March Associates breached that duty.

I.

We glean the following facts from the summary judgment record. Franchini had to install electric boxes on the wall of an electrical room. To do so, he used an extension ladder he retrieved from a supply closet inside the electrical room. The ladder was missing a section and rubber footings. After Franchini climbed up the ladder to attach tubing against the wall, the ladder slipped and fell to the ground, causing him to fracture his right wrist. The ladder had always been at the construction site and was used by other subcontractors' employees. There is no proof who owned the ladder or brought it to the construction site.

As the construction project's general contractor, March Associates' agreement with Glenpointe required it to "provide overall construction management services," supervise subcontractors, conduct safety inspections, "retain primary responsibility for site safety," and ensure its subcontractors follow its "Site Safety Program and Manual" (safety manual). It also had the

A-2428-22

right to sanction unsafe subcontractors and to extend its disciplinary policy to subcontractors' employees, enabling it to reprimand or even dismiss them from a construction site for safety infractions. The safety manual specifically addressed the "potential hazards" of using ladders because they "are a major source of injuries and fatalities among construction workers." The manual required all ladders "be inspected by a competent person on a periodic basis and after any occurrence that could affect their performance," and structurally defective ladders "be tagged with 'Do Not Use' or similar language and withdrawn from service until repaired." The manual also incorporated by reference Occupational Safety and Health Administration (OSHA) regulations on ladders, 29 C.F.R. §§ 1926.1050-.1060. Like the safety manual, OSHA mandated ladders "be inspected by a competent person for visible defects on a periodic basis and after any occurrence that could affect their safe use." 29 C.F.R. § 1926.1053(b)(15).

Bender Enterprises' subcontractor agreement with March Associates required it to "employ only methods of construction, erection, hoisting, rigging, forming, scaffolding and cribbing and use only tools, structures, etc., at the Project site that conform to OSHA and other Legal Requirements," and implement other specified safety measures. The agreement required that

Bender Enterprises comply with March Associates' safety program, and authorized March Associates to stop any work it deemed unsafe until Bender Enterprises addressed March Associates' safety concerns.

March Associates' safety director Frank Brady contends subcontractors' ladders were inspected and he visited the construction site once to twice a week "to make sure subcontractors were working safely." However, he did not recall personally inspecting the electrical room where the ladder was stored. He further stated he did not know "what type of ladders" Bender Enterprises used, as subcontractors did not have to tell March Associates when they brought ladders to the site. According to Brady, if a March Associates' representative saw part of an extension ladder separated from the whole, they would instruct the ladder's owner to repair it or remove it from the construction site. However, March Associates' site supervisor Daniel Allds, who "walk[ed] the site" every day, testified "if he saw just the top part to an extension ladder, he would just let it be because if it is just laying there, no one using it, there's" no "safety issue, unless the ladder had apparent damage to it." Allds also stated he did "not inspect the ladders that the subcontractors brought to the jobsite."

II.

5

Franchini sued defendants for negligence, seeking damages for his injury. March Associates impleaded Bender Enterprises. At the close of discovery, defendants moved for summary judgment. The court issued an order and written decision granting defendants summary judgment, finding they did not owe Franchini a duty of care.

The motion court rejected Franchini's argument that March Associates owed him a duty of care because it violated 29 C.F.R. § 1926.1053(b)(15), could have foreseen he "would be injured while using a defective ladder, and . . . should have known that the ladder [he] was using was defective based on the relationship between [March Associates and Bender Enterprises] and because the ladder was used prior to and after" he was injured. Quoting Alloway v. Bradlees, Inc., 157 N.J. 221, 235-36 (1999), and Tarabokia v. Structure Tone, 429 N.J. Super. 103, 112 (App. Div. 2012), the court recognized that the OSHA violations, though "pertinent in determining the nature and extent of any duty of care" a general contractor may owe, do not by themselves create an enforceable duty with respect to Franchini.

The court found Franchini provided no proof that "March [Associates] failed to perform daily inspections of the construction [site]," "knew or should have known" workers were using a defective ladder, or owned or controlled the

specific ladder he had used, which "was kept in a storage closet in the electrical room" Bender Enterprises employees used. The court emphasized Bender Enterprises had to supply its own equipment and March Associates only had to "ensure there were no visible defects." It found Bender Enterprises was responsible under the contract for providing safety training to its employees and ensuring its equipment satisfied OSHA regulations. The court further noted Franchini's expert, William Mizel, not OSHA itself, opined March Associates had violated OSHA regulations.

Franchini appealed.[2]

### III.

In examining the summary judgment under de novo review, Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016), we apply the same Brill[3] standard that bound the motion court. Townsend v. Pierre, 221 N.J. 36, 59 (2015); W.J.A. v. D.A., 210 N.J. 229, 237 (2012). This requires us to examine the record in the

---

[2] This court dismissed Franchini's initial appeal, which he withdrew because March Associate's third-party claims remained before the trial court. In a March 6, 2023 stipulation of dismissal, March Associates agreed to dismiss those claims "pending the outcome of any" future appeal by Franchini. Franchini re-filed his appeal on April 18, 2023, with his case information statement mentioning only the trial court's ruling as to March Associates. This court deemed his new appeal timely.

[3] Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520 (1995).

A-2428-22

light most favorable to Franchini, the opponent of the successful summary judgment motion. Brill, 142 N.J. at 540. Summary judgment is proper if the record demonstrates "no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment . . . as a matter of law." Burnett v. Gloucester Cnty. Bd. of Chosen Freeholders, 409 N.J. Super. 219, 228 (App. Div. 2009) (quoting R. 4:46-2(c)).

IV.

March Associates' summary judgment motion turns on whether it owed a duty of care to Franchini, and if so, whether there are undisputed facts that it breached its duty, which proximately caused Franchini's injury. See Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 594 (2013) (holding that, to prove a defendant's tort liability, a plaintiff must prove a duty of care, a breach of that duty, actual and proximate causation, and damages). We address these issues in turn.

A. Duty of Care

Whether a party owes a duty to another party is a question of law for the court to decide, not the fact finder. Rivera v. Cherry Hill Towers, LLC, 474 N.J. Super. 234, 240 (App. Div. 2022). In the seminal case of Hopkins v. Fox & Lazo Realtors, our Supreme Court held the existence of a duty of reasonable

care depends on "the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution." 132 N.J. 426, 439 (1993). In Alloway, the Court specifically addressed the precise situation here: whether a general contractor owed "a duty to assure the safety of an employee of a subcontractor" who uses "equipment supplied by the subcontractor" at the general contractor's work site. 157 N.J. at 225, 233. The Court fine-tuned the Hopkins factors, pronouncing "the foreseeability of harm, the relationship between the parties, and the opportunity and capacity to take corrective action" determine whether imposing "a duty of reasonable care" constitutes "fairness and sound policy." Id. at 233. Applying these principles leads us to conclude that March Associates owed Franchini a duty of reasonable care in making sure the ladder he used was safe.

Foreseeability examines "whether the defendant was reasonably able to ascertain that [its] allegedly negligent conduct could injure the plaintiff in the manner it ultimately did." Robinson v. Vivirito, 217 N.J. 199, 212 (2014) (citing McDougall v. Lamm, 211 N.J. 203, 225-26 (2012)). Foreseeability also analyzes "whether the defendant had actual or constructive knowledge of the risk of injury and 'is susceptible to objective analysis.'" Rivera, 474 N.J. Super. at 241 (quoting J.S. v. R.T.H., 155 N.J. 330, 338 (1998)).

9

Franchini argues foreseeability of his accident is evident from March Associates' safety manual, which called for safety precautions intended to prevent injuries caused by defective ladders, and OSHA's ladder safety regulations. March Associates thus had the responsibility to inspect ladders used by Bender Enterprises' employees and keep a defective ladder from being used. He also relies upon Mizel's opinion that March Associates had a duty under OSHA to remove the unsafe ladder.

March Associates contends that under Alloway's balancing test, it did not owe a duty to Franchini. First, Bender Enterprises was responsible for its own employees' safety per its subcontractor agreement and March Associates' safety manual. Second, based on Tarabokia, the risk of harm was unforeseeable because "the mere presence of [an otherwise undamaged] top portion of an extension ladder" separated from the rest of the ladder does not establish March Associates should have known a safety hazard existed, as the ladder presented no "immediate or obvious" safety risk and no evidence shows anybody from March Associates ever saw the ladder in use. Third, March Associates was not involved in the "means and methods" of Bender Enterprises' work and did not provide any of the tools Bender Enterprises' employees used. March Associates

10

stresses the ladder did not belong to it and was kept in Bender Enterprises' supply closet.

March Associates also argues "Mizel['s expert opinion] cites to no OSHA regulation that imposes an obligation to remove an otherwise undamaged top portion of an extension ladder" from a construction site, nor does he identify "any regulation that requires a general contractor . . . to inspect the tools used by subcontractors." Therefore, it argues Franchini cannot use Mizel's opinion to oppose summary judgment.

Our review of the record and the applicable law support Franchini's arguments. As to the parties' relationship, a duty is warranted if there was "a clear connection" between the subcontractor's employees' individual tasks and the general contractor's interests in the overall project. Alloway, 157 N.J. at 233. As to opportunity and capacity, a duty is appropriate if the defendant had "authority and control to take or require corrective measures to address safety concerns" affecting the project. Carvalho v. Toll Bros. & Devs., 143 N.J. 565, 576 (1996). No duty is warranted if a general contractor retained "broad, general superintendence over the overall results" but "exerted no control over the means and details of" subcontractors' work. Tarabokia, 429 N.J. Super. at 120.

March Associates' contracts with Bender and Glenpointe did not themselves create a duty of care under tort law. See Saltiel v. GSI Consultants, Inc., 170 N.J. 297, 316 (2002). But contracts can show the plaintiff was "within the 'range of harm' emanating from" the defendant's activities, warranting imposition of a duty of care. See Carter-Lincoln Mercury, Inc. v. EMAR Grp., 135 N.J. 182, 195-96 (1994). A defendant may owe a duty of reasonable care if a contractual obligation "contemplated the [defendant's] active participation and involvement" at a project site. E.g., Carvalho, 143 N.J. at 574. A contract might also establish foreseeability if its terms expressly "provided for the specific possibility of" certain harm "and prescribed contractual duties addressed to those concerns." E.g., ibid.

Based upon the parties' detailed contractual agreements, March Associates, as general contractor, had responsibility over Bender Enterprises' sub-contracting work to ensure the work was safely performed—including the use of ladders—to the benefit of Bender Enterprises' employees. March Associates had the motive, means, and opportunity to control Bender Enterprises' work. Bender Enterprises had to follow March Associates' safety manual, which mandated specific practices and subjected Bender employees to March Associates' disciplinary policy. The agreement and manual allowed

12

March Associates to dictate minute details of Bender Enterprises' work, which March Associates could unilaterally stop. While Bender Enterprises was required to supply its own materials and equipment, those items had to meet March Associates' safety standards. March Associates employees acknowledged that they controlled the construction site and delineated Bender Enterprises' work. March Associates even dictated the frequency and content of Bender Enterprises' safety meetings with its own employees. And any safety issues from Bender Enterprises' work as subcontractor "would have resulted in an interruption and a delay in" the overall project, for which March Associates was in turn contractually obligated to Glenpointe. See Alloway, 157 N.J. at 233.

March Associates' duty to Franchini is supported by Mizel's expert opinion. Mizel examined Bender Enterprises' subcontractor agreement and opined March Associates "developed and required all contractors to follow their safety program" and "controlled the means and methods of the contractors by scheduling when they could start working, following up on progress, supervising work, inspecting tools and equipment such as ladders and having authority to remove defective tools and equipment from the jobsite" and "stop unsafe work practices." He further opined March Associates violated several OSHA regulations, including 29 C.F.R. § 1926.1053(b)(15), which requires ladders be

13

inspected "for visible defects" periodically and "after any occurrence that could affect their safe use." March Associates' argument regarding Mizel's report is unpersuasive because "the failure by OSHA to find a violation against a particular party does not preclude a determination that the party nevertheless was subject to" and failed to follow an OSHA regulation. Alloway, 157 N.J. at 240; see also Costa v. Gaccione, 408 N.J. Super. 362, 373 (App. Div. 2009) (holding "violations of OSHA are to be considered with other 'fairness' factors in determining the existence of a duty and the duty's scope"). Furthermore, because Franchini satisfies the Alloway factors, an OSHA violation supports imposing a duty. Cf. Slack v. Whalen, 327 N.J. Super. 186, 195-96 (App. Div. 2000) ("Since [the] plaintiff failed to present proof to satisfy any of the factors required by Alloway for determining the existence of a duty, the mere fact that OSHA regulations may have been violated at the worksite is not sufficient to create a legal duty on defendants to have avoided the risk of injury to [the] plaintiff in this case.").

This is unlike the situation in Tarabokia, where the plaintiff suffered a latent injury caused by repeatedly using a tool his employer, the subcontractor, instructed him to use without first giving him the appropriate protective equipment. 429 N.J. Super. at 117-18. There, we held the risk of harm was

unforeseeable because the potential harm was not apparent at the time of injury. Ibid. Here, it was reasonably foreseeable that Franchini could fall and injure himself by using a ladder with no rubber footings to prevent it from slipping. Under these circumstances, it is fair and sound public policy to impose a duty on March Associates given its comprehensive role as general contractor to ensure safety at the construction site. See Carvalho, 143 N.J. at 573 (imposing a duty of reasonable care involves not just foreseeability of harm but also "on an analysis of public policy, that the actor owed the injured party a duty of reasonable care" (quoting Kelly v. Gwinnell, 96 N.J. 538, 544 (1984))).

B. Breach of Duty

Given our determination that March Associates owed Franchini a duty of reasonable care regarding the use of the ladder, the next question is whether the duty was breached. This is a question of fact, Jerkins v. Anderson, 191 N.J. 285, 305 (2007), which cannot be resolved on this summary judgment record.

There is no proof that a March Associates representative saw the ladder before Franchini fell and injured himself. Nevertheless, considering March Associates' safety duties, a reasonable jury could infer that given the unsafe ladder's use before Franchini's accident, it should have thoroughly inspected the

construction site to prevent its use by Franchini. Thus, summary judgment should not have been granted.

Reversed and remanded for trial. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office

CLERK OF THE APPELLATE DIVISION

A-2428-22