**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1129-17T1

JOSE LATA,

     Plaintiff-Appellant,

v.

DANIEL LOUGHLIN and/or
KELLY LOUGHLIN,
and MILLSTONE VALLEY
GENERAL CONSTRUCTION,

     Defendants,

and

WAITIKOWICH CONSTRUCTION
INC.,

     Defendant-Respondent.

_____

Argued November 7, 2018 – Decided November 26, 2018

Before Judges Yannotti and Natali.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Docket No. L-1747-15.

Carlos H. Acosta, Jr. argued the cause for appellant (Mescall & Acosta, PC, attorneys; Carlos H. Acosta, Jr., on the brief).

Joseph A. Reardon, III argued the cause for respondent (Leary, Bride, Mergner & Bongiovanni, PA, attorneys; Joseph A. Reardon, III, of counsel and on the brief).

PER CURIAM

Plaintiff Jose Lata appeals the Law Division's September 29, 2017 order granting defendant Waitikowich Construction, Inc. (Waitikowich) summary judgment and dismissing his personal injury complaint. We affirm.

Waitikowich was the general contractor of a residential construction project and hired Millstone Valley General Construction (Millstone) to complete the framing work on the home. Plaintiff, an employee of Millstone, was installing a box beam on the second story of the site, when he lost his balance, fell approximately nine feet to the ground and sustained bodily injuries. After the Occupational Safety and Health Administration (OSHA) investigated the accident, it issued Millstone citations for violating OSHA regulations and a penalty of $2,860.

When deposed, Christopher Patrick, Millstone's owner and president, testified that Millstone provided its own tools and safety equipment, including safety harnesses for its workers. He also stated that he did not expect

Waitikowich to assume responsibility for overseeing the safety of his employees.

In his deposition, plaintiff testified that Millstone's foreman was the only person supervising his work, and the only supervisor present at the construction site when the accident occurred. Further, Peter Loughlin, the vice president of Waitikowich, stated that Millstone was expected to "coordinate [its] own safety program," and that Waitikowich hired Millstone because it did not have extensive experience framing and the safety standards associated with it.

Waitikowich moved for summary judgment and maintained that it did not owe plaintiff a duty of care. In opposition to the motion, plaintiff submitted an expert report prepared by Vincent Gallagher, an occupational safety and health expert, who opined that Waitikowich "failed to plan, monitor and ensure that [Millstone's] framers were protected from falls while installing joists and box beams," violating OSHA regulations. Gallagher further concluded that Waitikowich "made a deliberate decision to permit Millstone . . . workers to work while exposed to fall hazards likely to result in serious injury or death."

The court granted the motion, concluding that, as a matter of law, Waitikowich did not owe a duty of care to plaintiff. The court relied on Alloway v. Bradlees, Inc., 157 N.J. 221 (1999), and explained it would be inequitable to

impose a duty of care on Waitikowich because it was "so far removed [from] the activities that Millstone was undertaking and the work that . . . plaintiff was doing."

Plaintiff raises three arguments on appeal. First, he maintains Waitikowich had a non-delegable duty to provide him with a safe work environment free from foreseeable injuries. Second, plaintiff asserts that Waitikowich and the court erroneously relied on an "an outmoded approach to construction safety law" that relieved general contractors from liability for a subcontractor's negligence. Finally, plaintiff argues for the first time on appeal that OSHA regulations preempt New Jersey common law and impose a non-delegable duty on general contractor, contrary to Waitikowich's claims. Having considered these arguments in light of the record and applicable legal principles, we conclude the court correctly determined that Waitikowich did not owe plaintiff a duty of care.

In ruling on a summary judgment motion, a trial court must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). An

A-1129-17T1

appellate court reviews a grant of summary judgment de novo, using the same standard as the trial court. Turner v. Wong, 363 N.J. Super. 186, 198-99 (App. Div. 2003). Thus, we must determine whether a genuine issue of material fact is present and, if not, evaluate whether the trial court's ruling on the law was correct. See Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J. Super. 162, 167-69 (App. Div. 1998).

"To sustain a cause of action for negligence, a plaintiff must establish four elements: '(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages.'" Townsend v. Pierre, 221 N.J. 36, 51 (2015) (quoting Polzo v. Cty. of Essex, 196 N.J. 569, 584 (2008)). "[T]he question of whether a duty exists is a matter of law properly decided by the court . . . ." Strachan v. John F. Kennedy Mem'l Hosp., 109 N.J. 523, 529 (1988).

At common law, a general contractor was not liable for a subcontractor's employee's injuries caused by "the condition of the premises or the manner in which the hired work was performed." Tarabokia v. Structure Tone, 429 N.J. Super. 103, 112–13 (App. Div. 2012). However, that general rule did not apply if the general contractor: (1) retained control over the "manner and means" of how the work was performed; (2) "knowingly engage[d] an incompetent

A-1129-17T1

subcontractor;" or (3) contracted for work that was "inherently dangerous." Id. at 113.

Under the "more modern approach," courts consider "the foreseeability of the risk of injury, both its nature and severity." Id. at 113-14 (citations omitted). "Although a foreseeable risk is the indispensable cornerstone of any formulation of a duty of care, not all foreseeable risks give rise to duties." Dunphy v. Gregor, 136 N.J. 99, 108 (1994). "Ultimately, [determining] whether a duty exists is a matter of fairness," ibid., and involves a complex analysis that "weigh[s], and balance[es] several factors – the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution." Alloway, 157 N.J. at 230 (quoting Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439 (1993)) (internal quotation marks omitted). "The analysis is both very fact-specific and principled; it must lead to solutions that properly and fairly resolve the specific case and generate intelligible and sensible rules to govern future conduct." Hopkins, 132 N.J. at 439.

In support of his first and second points of error, plaintiff principally relies on Alloway, as well as Meder v. Resorts Int'l Hotel, Inc., 240 N.J. Super. 470, 475-76 (App. Div. 1989). We disagree that those cases, and the other authority cited by plaintiff, supports the imposition of a duty of care on Waitikowich.

6

In Alloway, our Supreme Court concluded that a general contractor had a duty to ensure the safety of a subcontractor's employee who was injured when her arm became entangled in a malfunctioning hydraulic lift mechanism of a dump truck. Alloway, 157 N.J. at 240. In that case, the general contractor attempted to repair the mechanism the day before the accident and knew it was still defective before plaintiff was injured. Further, the general contractor directed the subcontractor's work and the subcontractor's owner was an employee of the general contractor. Id. at 232-33.

The Alloway court imposed a duty under those facts "as a matter of fairness and sound policy." Id. at 233. The Supreme Court concluded the risk of injury was clearly foreseeable because the general contractor had actual knowledge immediately preceding the accident of the defect in the lift, the dangers of malfunction, and the risk of injury. Moreover, the parties shared a close relationship and the general contractor had the "opportunity and capacity" to exercise authority over the equipment and had undertaken steps to correct defects in the truck. Ibid.

The facts here are in sharp contrast to those in Alloway. It is undisputed that Waitikowich hired Millstone, an experienced subcontractor, to perform the framing work. Waitikowich did not actively supervise Millstone's work, its

7

employees, or the manner in which the framing was performed. Rather, Millstone was solely responsible for hiring its workers, directing their work, and ensuring their safety.

Patrick testified that the construction site had two or three buckets containing "a rope, a harness, everything in the bucket you need for fall protection," and although plaintiff disputed much of this testimony, it was uncontested that Waitikowich was not responsible for providing Millstone workers with safety equipment. Nor did plaintiff dispute that Millstone provided its workers with all the tools and equipment used for the project. Further, Loughlin was not on the site at the time of the accident, and there is no evidence in the summary judgment record that the sole Waitikowich employee on-site that day interacted with plaintiff in any capacity.

Finally, Waitikowich had no special relationship with the Millstone, was not involved in creating the dangerous condition, and was unaware that plaintiff was not wearing his safety harness. By contrast, in Alloway, the contractor had unsuccessfully tried to fix the truck that caused plaintiff's injury and failed to warn her of the danger it posed. Alloway, 157 N.J. at 227; see also Carvalho v. Toll Bros. & Developers, 143 N.J. 565, 577–78 (1996) (duty imposed on general

contractor where its engineer was assigned to observe the site and knew about the dangers of the unstable trenches that caused plaintiff's death).

Thus, we find no basis in this record to impose a duty on Waitikowich to require it to conduct daily inspections, supervise the project, or ensure that Millstone's workers, like plaintiff, were using safety harnesses. Even if we were to conclude that the risk of falling from a beam was foreseeable by Waitikowich, the relationship of the parties, the nature of the attendant risk, and the opportunity and ability to exercise care were not such that a duty of care on the part of the general contractor could, as a matter of law, be found to exist. See Tarabokia, 429 N.J. Super. at 120-21 (general contractor had no duty of care for the safety of subcontractor's employee when general contractor did not contribute to the risk of injury, placed the responsibility for work site safety on the subcontractors, and no special relationship existed between the contractor and subcontractor).

Further, while we acknowledge that OSHA cited Millstone, those violations do not automatically impose a duty of care on a general contractor. As Alloway makes clear, a contractor's duty of care is determined by evaluating "general negligence principles," 157 N.J. at 230, and "the violation of OSHA regulations without more does not constitute the basis for an independent or

direct tort remedy." Id. at 236; see also Costa v. Gaccione, 408 N.J. Super. 362, 372-73 (App. Div. 2009) ("non-compliance with [OSHA] standards does not alone create a viable cause of action, nor does it necessarily place a tort duty of care on the general contractor . . . [and] violations of OSHA are to be considered with other 'fairness' factors in determining the existence of a duty . . . .").

Finally, we need not address plaintiff's final point that OSHA regulations preempt New Jersey law because that issue was not raised in the trial court and does not "go to the jurisdiction of the trial court or concern matters of great public interest." Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (quoting Reynolds Offset Co., Inc. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959)).

To the extent we have not directly addressed the balance of the plaintiff's arguments, we find them to lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1129-17T1